OPHELIA KENNEDY, Appellant, *v.* MARY KEATING *et al.*, Respondents.

*Equity—Trusts.*—An agent who buys with his own funds, at a public sale by third parties, the reversionary estate in the lands of his principal, will not be held a trustee for his principal unless he purchased under an agreement to that effect.

### *Appeal from St. Louis Land Court.*

*R. S. Hart* and *E. Peacock*, for appellant.

I. The judgment is clearly not only against the law arising upon the case as stated in the record, but is clearly against the evidence, for that establishes his fiduciary relation as trustee for plaintiff in point of fact; recognizing it, he could not make the purchase.

II. The judgment of the court is clearly wrong on the law separately, on the facts separately, and especially is it wrong putting the law and the facts of the case together. (Hill on Trustees, 782, title, "Of the Disabilities of Trustees"; Kelly v. Johnson, 27 Mo. 249; 1 John's Chy. Rep. 582.)

III. The whole case shows such bad faith, on the part of the trustee or quasi guardian, as to call for the intervention of the court in setting aside his purchase; especially his bad faith in preventing competition at the sale.

IV. The case is in the nature of a bill in equity, and should be so considered here, and the whole grounds of the judgment of the court below should be accordingly reviewed.

*A. M. & S. H. Gardner*, for respondents.

I. It is simply the naked question of the right of Keating to purchase in his own right and for his own benefit, the appellant relying upon the well established rule that a party will not be allowed to purchase and hold property for his own use and benefit to which he stands in a fiduciary relation, if contested by the *cestui que trust.*

It will be observed, however, that that rule cannot be applied to this case, where the sale was made by a public officer

under proceedings adverse to the plaintiff's interest, and which Keating, had he been acting as her trustee or guardian, had not the power or means to prevent.

II. An actual guardian even, without funds in his hands, may lawfully become the purchaser, for his own use, of his ward's real estate sold by the sheriff under a judgment against the ward's ancestor. (Chospenning's Appeal, 32 Pa. 315.)

III. The reasons which forbid an agent or trustee to purchase the trust property apply to the case where he is the seller, and not where he purchases from one appointed to sell, as in this case. (Prevost v. Gratz, Pet. C. C. 364; *id.* 378.)

IV. Even if it were admitted that Keating had, or was, acting in a fiduciary capacity, as regards the appellant and the property in question, (either as her agent, trustee or quasi guardian,) still he could become the purchaser, as it was an absolute sale made by a public officer and entirely without his control. Nothing except fraud, which is not even alleged in this case, could divest the title. (Fisk v. Sarber, 6 Watts & Serg. 18.)

V. A purchaser at a public sale, who has paid the purchase money, can only be held a trustee on the ground of fraud. (Harris v. Conner, 10 Watts, 313; Sheldon v. Sheldon, 13 John. 220.)

VI. This was a public sale made to the highest bidder, no circumstances of fraud, money paid by the purchaser, and should not be disturbed. Even a guardian *ad litem* in partition may become a purchaser at the sale. (Jackson v. Woolsey, 11 John. 446.)

VII. It is further urged by the respondents that this being a proceeding in equity to enforce a trust respecting an interest in land, it cannot be maintained unless such trust is evidenced by an agreement in writing. (Walker v. Locke, 5 Cush. 90.) Though a trust need not be created by writing, yet to take the case out of the statute of frauds its terms and conditions must be clearly manifested and proven in writing.

VIII. Loose and general declarations of the intention of

holding property in trust for others is not sufficient for the declaration of a trust which equity will recognize or enforce. (Steere v. Steere, 5 John Chy. 1.) But to entitle the plaintiff to recover, it was necessary for her to show that the trust had been created, or the promise to convey made in writing, there being no allegation of fraud. (Wildbahn v. Robideaux, 11 Mo. 659.)

BAY, Judge, delivered the opinion of the court.

This is a proceeding in the nature of a bill in equity to divest the defendants of their title to a reversionary interest in a lot of ground in the city of St. Louis, and to vest the same in the plaintiff. The petition alleges that one René Paul, who died in 1851, devised and bequeathed, by his last will and testament, to the plaintiff, a lot of ground in block number 147, in the city of St. Louis, being the southeast corner of said block, and containing twenty-five feet front on Sixth street, by one hundred and twenty-seven and a half feet deep along Cerré street; that said devise is subject to a provision as follows: " *Provided, however*, that should she die without having lawful issue, then the said lot shall revert to, and vest in and belong to my right heirs, to be held in the same manner as if this devise to the said Ophelia had not been made ; and, in that event, subject to the provisions hereinafter made as to the sale and division of my property and effects, and such reversionary interest in said lot to be considered for these purposes a part of my estate."

The petition further alleges that said will authorized and empowered the executor to sell and convey all the property of said estate, real, personal and mixed, embracing the reversionary interest in the lot of ground aforesaid; and that the executor did sell such reversionary interest to Patrick Keating, at the price and sum of one hundred dollars; that, at the time of said sale, Keating was the agent of the said plaintiff, and received the rents and income of said premises, said plaintiff then having money in the hands of said Keating,

and that said Keating purchased said reversionary interest for the sole benefit of said plaintiff.

Patrick Keating being deceased, the suit is brought against his widow and heirs at law.

The answer of the defendants admits the devise, as stated in the petition, but denies that Keating was the agent of plaintiff, or that he had any money in his hands at the time of the sale belonging to plaintiff, or that he purchased said reversionary interest for the benefit of plaintiff; and charges the fact to be that he purchased said interest at a public sale for his own benefit, and paid full value therefor; and that, at the time of said purchase, said plaintiff, instead of having money in his hands, was indebted to him, and still continues indebted to his estate.

The proof upon the trial was that Keating acted in the capacity of agent of plaintiff in collecting the rent for the lot devised to her, and exercised a general control over her affairs, and previous to the sale had expressed an intention to purchase said reversionary interest for her benefit; but no such intention was expressed at the sale, nor was there any evidence tending to show that at the time of the sale he had money in his hands belonging to plaintiff; but, on the contrary, the evidence tended to show that she was indebted to him. The sale was a public sale by the executor of Paul, and Keating being the highest bidder became the purchaser.

The court below decreed in favor of the defendants, whereupon the plaintiff sued out her writ of error. The theory of the plaintiff, as shown in the instructions asked by her, was that Keating was acting in the capacity of a trustee for plaintiff, having the general charge and control of her affairs, and, according to one of the settled principles of courts of equity, could not take advantage of his situation to obtain a personal benefit to himself at the expense of his *cestui que trust*. It is true that in equity all acts done by a trustee in respect to the trust property are deemed to have been done for the benefit of the *cestui que trust*, and not for his own benefit; and it is upon this principle that courts have held that if a trus-

tee purchases a mortgage on the trust estate at a discount, he will not be allowed to avail himself of the difference, but the purchase will be held a trust for the benefit of the *cestui que trust*. It is also a well settled principle of equity law that a trustee cannot become the purchaser of the trust property at a sale made by him; but it is not perceived how these well established principles of equity law can be invoked in behalf of the plaintiff in this case, for the reversionary interest sold as aforesaid was not trust property, nor was it any interest belonging to the plaintiff, nor was it in the hands or under the control of Patrick Keating, but, on the contrary, belonged to the estate of René Paul, and was sold at public auction, by his executor, in obedience to his will. No good reason, therefore, can be given why Keating should not be permitted to purchase said interest for his own benefit as well as any other property belonging to the estate of Paul.

It is true that if he purchased it under an agreement or understanding with the plaintiff that he was to make the purchase for her benefit, he would be held to have made it in trust for her, and a court of equity would enforce such trust; or, if he purchased it with the money of the plaintiff, a resulting trust would be created by operation of law; and this was the view taken by the court below, but the evidence failed to establish either, and the court properly decreed in favor of the defendants.

The other judges concurring, the judgment will be affirmed.