CHAFFIN *et al. v.* HULL *et al.*

*(Circuit Court, E. D. Missouri, E. D.*   March 5, 1892.)

1. RES JUDICATA.
   In 1840, for a consideration paid by the husband of C., a deed of land was executed to a trustee in trust for C., which by mistake vested only a life-estate in C., remainder to her children, or, in default of children, to her right heirs, the intention being that a fee should be vested. Thereafter an action was brought to reform the deed, in which the trustee and other parties to the deed, but not the contingent remainder-men, were made parties. Before final decree therein, the husband of C. died. *Held,* that the trust became executed by the statute of uses, and the trustee had no further duties to perform, and the decree thereafter entered was not binding on the contingent remainder-men, they not being represented in the action.

2. RESULTING TRUST—FRAUD OF AGENT.
   H., while acting as confidential agent in charge of property, both under C. and the trustees under C.'s will, acquired full information of a defect in C.'s title, and the intention of C. and of the trustees to acquire the outstanding title, or to contest its validity, but secretly purchased such title in the name of another, and by his connivance caused the tenants of the property to attorn to the person to whom the tstanding title had been conveyed. *Held,* that he would not be allowed to profit ⌄ʲ his purchase, but would be treated in equity as holding the title for his principals.

3. SAME.
   Nor will the heirs of an attorney who was jointly interested with H. in the purchase, and conducted all the negotiations with full knowlege of H.'s relations to C., stand in any better position than H.

4. TRUSTEES—DUTIES AND LIABILITIES.
   The testamentary trustees under C.'s will were given full power to sell, mortgage, and lease, and reinvest the proceeds, in their discretion. *Held,* that they had power to buy in an outstanding claim as a cloud on their title, and could maintain the action against H. and the others to charge them as constructive trustees, and in such action defendants would be charged with the rents and profits, and credited with all expenditures for taxes, insurance, and improvements, and the sums expended in purchasing the outstanding interests.

In Equity. In the opinion by BREWER, J., on demurrer to the bill, (39 Fed. Rep. 887,) the facts were stated as follows:

"In 1840, one William Myers was the owner of the property in question. For a consideration of $4,000 paid by Elijah Curtis, a deed was executed by Myers and wife to one Samuel Russell in trust for Mrs. Curtis. The deed, as drawn and executed, vested a life-estate in Mrs. Curtis, and the remainder in her right heirs. It was so drawn and executed through a mistake of the draughtsman; the intent of all the parties being that the fee should be vested, and not a life-estate, and that Russell, who so held the title as trustee for Mrs. Curtis, could, with his *cestui que trust,* convey the fee. After the deed had been so executed and recorded, in 1843, the mistake having been discovered, proceedings were had in the circuit court of St. Louis county to correct that deed. A decree was entered that it be reformed so as to express the intent of the parties, and vest a fee instead of a life-estate. To that proceeding Mr. and Mrs. Curtis, Mr. Russell, the trustee, and Mr. and Mrs. Myers, the grantors, were parties. The heirs of Mrs. Curtis were not made parties. By subsequent conveyances, the title vested in Mrs. Curtis and Mr. Russell, her trustee, passed to one Edward Chaffin, in 1850. He entered, took possession, and remained in possession until his death, in 1883. Thereafter the present complainants, holding under his will, took possession, and retained it until 1886. Mr. Curtis, the husband of Mrs. Curtis, the party who paid the money, died in 1843; but Mrs. Curtis lived until 1884, when she died, leaving no children. Mr. Chaffin during his possession became aware of the fact that, inasmuch as the heirs of Mrs. Curtis were not made parties to that decree of reformation, they had, at least, an apparent title to the re-

mainder. During the years of his possession, at least during the last few years of his possession, he himself having removed to Massachusetts, he employed Leon L. Hull, one of the defendants, as his agent to look after the property, to pay taxes and insurance, to rent the property, and have general charge thereof as his agent. During the years of that relationship he communicated to Mr. Hull his doubts as to the completeness of his title as disclosed by the record, and made several efforts, through him, to ascertain the residence and the names of the right heirs of Mrs. Curtis, with a view of obtaining from them releases of their apparent title to the remainder. Mr. Hull was fully possessed of information in this respect from Mr. Chaffin, his principal. On the death of Mr. Chaffin these complainants, finding Mr. Hull in possession as agent, continued him in that position, and he assumed the same confidential relations to them that he had had to Mr. Chaffin. After the death of Mrs. Curtis, in 1884, Mr. Hull, the agent, conspiring with one William Clark and one Samuel Herman, proceeded to hunt up the right heirs of Mrs. Curtis, and obtained deeds from them, the deeds being made to William Clark, one of the conspirators, of their respective interests in the remainder. While apparently continuing as the agent, and representative of these complainants, in pursuance of this conspiracy he caused legal proceedings to be instituted, which, being carried on collusively, terminated in the dispossession by the defendants of these complainants, and the transfer of possession to Clark, one of the conspirators. This was accomplished in 1886. The charge is that these arrangements and transactions between Clark, Hull, and Herman were a part of a conspiracy, and were a breach of the trust relations existing between the complainants and Hull. All these facts being stated in the bill, the prayer is that this court shall decree that the decree of the St. Louis circuit court, reforming that deed, concludes the right heirs of Mrs. Curtis, and operated to vest the full legal title in Mrs. Curtis and her trustee, and these complainants claiming under her; or, if the court cannot so decree, that it now decree a reformation of that deed, correcting the mistake, and making the deed to-day operative as a transfer of the fee, and therefore cutting off all interests in the remainder in the heirs of Mrs. Curtis or their grantees, or, failing that, that the court decree that the transactions by which Leon L. Hull, with his co-conspirators, obtained the legal title to the remainder were in breach of the fiduciary relations existing between Hull and the complainants, and therefore that the title which they acquired was acquired in trust for the complainants."

*Cunningham & Eliot,* for complainants.

*S. N. Taylor* and *Joseph S. Laurie,* for defendants.

THAYER, District Judge. 1. The court adheres to the views expressed in its decision overruling the demurrer to the bill, (39 Fed. Rep. 887, 890,) that the contingent remainder-men are not bound by the decree entered in the St. Louis circuit court on September 16, 1843, in the case of *Elijah Curtis and Wife* v. *Wm. Myers et als.* That suit was instituted for the express purpose of reforming the deed of Myers and wife, and thereby destroying the estate or expectancy of the contingent remainder-men. The latter persons were entitled to be heard in defense of their rights, but, in point of fact, their interest was not represented. Before the final decree was passed, the trust originally created by the deed of William Meyers and wife to Samuel Russell, trustee, had been executed by the statute of uses. The trust ended when Mrs. Curtis became discovert. Thenceforward she had a legal estate for life. The trustee had no further

duties to perform, either as respects the life-tenant or the remainder-men. It was not even necessary for him to execute a conveyance to the remainder-men on the death of Mrs. Curtis, as the statute of uses had already divested him of the legal title. No such conveyance has in fact been made by the trustee since the termination of Mrs. Curtis' life-estate, nor is it pretended that such a conveyance is or was necessary to perfect the title of the remainder-men. *Roberts* v. *Moseley*, 51 Mo. 282; *Ware* v. *Richardson*, 3 Md. 505; *Handy* v. *McKim*, 64 Md. 561, 4 Atl. Rep. 125; *Bacon's Appeal*, 57 Pa. St. 504, 512; *Watkins* v. *Reynolds*, 123 N. Y. 211, 25 N. E. Rep. 322; *Richardson* v. *Stodder*, 100 Mass. 530; 2 Washb. Real Prop. 499, 500; Perry, Trusts, § 310a, and citations; and see, also, *Doe* v. *Considine*, 6 Wall. 458, 471, and *Young* v. *Bradley*, 101 U. S. 782.

As there was no person but Mrs. Curtis before the court, at the time the final decree was entered, who had either a legal or equitable estate in the premises to be affected by the decree, and as the issue to be tried was one in which the interest of Mrs. Curtis, the life-tenant, stood opposed to that of the remainder-men, it is evident that the remainder-men were not represented in the suit to extinguish their expectancy. It is also manifest that there was no real controversy in that suit, for the reason, no doubt, that there was no person before the court having an interest in the property identical with that of the remainder-men, (or having any estate, legal or equitable,) who was interested in making a defense in their behalf. A number of cases have been cited by complainants' counsel in support of the proposition that the final decree of September 16, 1843, was binding on the remainder-men, but the court is of the opinion that they do not sustain the contention. In the case of *Miller* v. *Railway Co.*, 132 U. S. 662, 10 Sup. Ct. Rep. 206, a decree annulling a will was adjudged to be conclusive as against certain persons in whose favor the will created an executory devise, for the reason that the executor of the will, and an infant son of the testator, who was a devisee in fee of the whole estate, had been made parties to the suit. The interests of the executory devisees and the devisee in fee were clearly identical. The former were accordingly well represented by the devisee in fee and the executor. It may also be admitted that a tenant in tail may well represent succeeding tenants in tail or contingent remainder-men in all litigation affecting the estate where the interest of the tenant who is made a party is identical with that of the persons who are to be bound by representation. It may be conceded that an active trustee can represent beneficiaries of the trust, especially if they are very numerous; and it may also be conceded that, in suits to change investments and in suits for partition, it is generally sufficient to bring before the court all who can be made parties. *Hopkins* v. *Hopkins*, 1 Atk. 580, 590; *Lorillard* v. *Coster*, 5 Paige, 172; *Basnett* v. *Moxon*, L. R. 20 Eq. 182; *Richter* v. *Jerome*, 123 U. S. 233, 8 Sup. Ct. Rep. 106; *Kerrison* v. *Stewart*, 93 U. S. 155. See, also, *McArthur* v. *Scott*, 113 U. S. 400–403, 5 Sup. Ct. Rep. 652.

But these decisions fall short of establishing the contention that the expectancy of a contingent remainder-man can be effectually extinguished when there is no one before the court to represent him but a trustee

whose trust has been executed under the statute of uses, and a life-tenant whose estate is to be made an estate in fee by the operation of the expected decree. The doctrine of virtual representation, as generally understood and enforced in this country, is not applicable to such a case, and will not warrant the conclusion that the contingent remainder-man is barred of his right. *McArthur* v. *Scott*, 113 U. S. 340, 407, 5 Sup. Ct. Rep. 652; *Moseley* v. *Hankinson*, 22 S. C. 323; *Covar* v. *Cantelou*, 25 S. C. 35; *Monarque* v. *Monarque*, 80 N. Y. 320; *Nodine* v. *Greenfield*, 7 Paige, 544; *Johnson* v. *Jacob*, 11 Bush. 646; *Downin* v. *Sprecher*, 35 Md. 474. In *McArthur* v. *Scott* it was said that "in every case there must be such parties before the court as to insure a fair trial of the issue in behalf of all."

2. The second controlling question in the case the court decides in favor of the complainants. That is to say, the court holds that defendant Hull acquired the interest of the remainder-men in the property in controversy under such circumstances that a court of equity must treat him as a constructive trustee. Hull was the confidential agent of complainants' testator for many years prior to his death; for at least six years prior thereto he had charge of the particular property now in controversy. During that period he acquired full information of the defect in his principal's title. He became aware of the fact that it was doubtful whether his principal had more than an estate *per autre vie* in the premises in question; that his principal was anxious to remove the cloud upon the title; and that, in any event, he did not intend to surrender the possession of the premises to the remainder-men, on the death of Mrs. Curtis, until there had been an adjudication of the validity of their title, inasmuch as it was doubtful whether their title was valid. It cannot be doubted that Edwin Chaffin, the testator, frequently consulted with Hull concerning the outstanding title, and that Hull was fully advised of his intention to contest its validity if he did not succeed in acquiring it for a fair consideration. The death of the testator did not alter the defendant's relation to the property. He still continued to act as the confidential agent and adviser of the complainants in all matters pertaining to the property, and was fully aware of their purpose to contest the title of the remainder-men, if they did not succeed in acquiring it. The fact that Mr. Hull rendered his accounts of rents collected from the property to the local administrator (Mr. Eliot) is of no significance, so far as his relation to the complainants is concerned, for the reason that the administration in this state was merely ancillary to the administration in Massachusetts. The mere interposition of a local administrator between the defendant and the foreign executors and trustees did not terminate the relation of trust and confidence which existed between them, or lessen the obligation of fidelity which the defendant owed to the executors and trustees. The interest of the remainder-men was purchased by the defendant during the existence of his agency, and was asserted against the complainants in a manner which deserves censure. The negotiations for the purchase were conducted by the defendant secretly, with a view, at first entertained, of acquiring the outstanding

interest, and selling it to the complainants at a profit. The title, when acquired from the remainder-men, was conveyed to a third person for the purpose of concealing the defendant's connection with the transaction. By the intentional neglect of the defendant to discharge his duty to his clients, (if not by his advice and persuasion,) the tenants in possession of the property were induced, during the existence of the agency, to attorn to the person in whom the outstanding title had become vested; and, after the complainants had been thus dispossessed, the defendant, as agent of the complainants, and at their request, brought a suit to recover the possession, without advising them that the tenants had in reality attorned to himself as owner of the outstanding title. In the light of these facts, which are not seriously denied, it is sufficient to say that a court of equity will not allow the defendant to profit by his purchase, but will treat him as holding the title in trust for his principals. The authorities fully warrant the conclusion that an agent in charge of property will not be permitted to purchase and assert against his principal an outstanding claim or interest, which the principal is desirous of acquiring as a means of perfecting his title. Even if it be conceded that an agent may purchase the reversion where his principal is the owner of an interest that is clearly only a life-estate, (*Kennedy* v. *Keating,* 34 Mo. 25,) yet that rule will not justify an agent in purchasing an outstanding claim of doubtful validity, which the principal intends to contest if he cannot acquire it by purchase, (*Michoud* v. *Girod,* 4 How. 503, 553; *Ringo* v. *Binns,* 10 Pet. 269; *Grumley* v. *Webb,* 44 Mo. 444; *Massie* v. *Watts,* 6 Cranch, 148; *Baker* v. *Humphrey,* 101 U. S. 494; *Jamison* v. *Glasscock,* 29 Mo. 191; *Gardner* v. *Ogden,* 22 N. Y. 327; Perry, Trusts, § 206, and citations.)

3. The heirs of Samuel Herman, deceased, who are parties to the suit, stand in no more favorable attitude before the court than their co-defendant. They are not innocent purchasers for value of the interest of the remainder-men. Their ancestor, Samuel Herman, appears to have entered into an arrangement with the defendant Hull to purchase the interest of the remainder-men for their mutual profit. He was an attorney at law, conducted all the negotiations leading up to the purchase, and appears to have acted as Hull's adviser, both as to the attitude he should assume towards the complainants, the representations he should make, and the facts he should conceal from their knowledge. He was also fully aware of Hull's relation to the complainants. Having acted as Hull's adviser in all of the transactions, with full knowledge of his relation to the complainants, his heirs cannot derive any benefit from the purchase, but must be likewise treated as trustees.

4. Finally, the court is of the opinion that the complainants, as testamentary trustees under the will of Edwin Chaffin, deceased, have the right to maintain this suit for the purpose of charging the defendants as constructive trustees. The point made, that they have no right to prosecute the suit in that aspect, for the reason that the will gave them no power to purchase the outstanding claim of the remainder-men, appears to the court to be without merit. By the will of Edwin Chaffin, they were

vested with the title to all of the testator's real property, (including the property now in controversy,) to hold upon certain active trusts. They were given power to sell, mortgage, or lease all the property committed to their charge, and to reinvest the proceeds as they deemed advisable. It can hardly be doubted that, under the provisions of the will, they had the right to buy in an outstanding claim that was a cloud upon their title, and that a court of equity or probate would allow them to take credit for such an expenditure on account of the trust-estate. But, in any event, an agent of the complainants, who has violated his trust, cannot be permitted to make such a defense. It does not lie in his mouth to say that no relief should be granted because the court will probably grant relief upon conditions with which the complainants have no right to comply. It may be that the rents and profits of the property, while the defendants have been in possession, will be fully adequate to reimburse them for their expenditures in purchasing the interest of the remainder-men, without requiring any expenditure on the part of the trustees.

5. A decree will accordingly be entered in favor of the complainants, adjudging that the defendants hold the legal title to the property in controversy in trust for the complainants, and further adjudging that such title be divested out of the defendants, and vested in the complainants, as testamentary trustees under the will of Edwin Chaffin, deceased. A reference will also be ordered to one of the standing masters in chancery, to take an account of the rents and profits which defendants have received during their occupancy, and in stating such account the defendants will receive credit for all expenditures on account of taxes, insurance, and improvements, as well as for all sums expended in purchasing the interest of the remainder-men.