## VILLAGE OF BROOKFIELD v. PENTIS et al.

### No. 6604.

Circuit Court of Appeals, Seventh Circuit.

Jan. 4, 1939.

Otis F. Glenn and Raymond G. Real, both of Chicago, (Harold E. Baily, of Chicago, Ill., of counsel), for appellant.

Charles Center Case and Raymond Canaday, both of Chicago, Ill., for appellee James C. Pentis.

Frederic Burnham, David F. Rosenthal, and Frank D. Mayer, all of Chicago, Ill., for appellee American Bonding Co., of Baltimore.

Egbert Robertson and Henry L. McIntyre, both of Chicago, Ill., for appellee United States Fidelity & Guaranty Co.

Louis L. Dent, George M. Weichelt, and John P. Hampton, all of Chicago, Ill., for appellee National Surety Corporation.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff, a municipal corporation organized under the laws of Illinois, appeals from an order dismissing, upon joint motion of all defendants, its third amended bill of complaint.

Plaintiff's averments were in substance as follows: Pentis was the village treasurer from May, 1927 to April, 1929, and again from May, 1930 to April, 1934. For the year 1927 the treasurer, as principal, and defendant American Bonding Company, as surety, executed a bond in the sum of $50,000 whereby they were obligated to pay plaintiff that sum if the conditions should be broken. The instrument provided that the treasurer should faithfully discharge the duties of his office, justly pay out all moneys that might come to him, render true account when required by the village and well and truly perform his duties under the laws of Illinois and the ordinances of the village. Similar bonds were executed, each year, differing only as to surety, those acting in that capacity in other years being defendants United States Fidelity and Guaranty Company and National Surety Corporation.

During and prior to this period, the village issued special assessment bonds in anticipation of collection of special assess-

ments. It was the duty of the village to collect the assessments and to apply the money collected toward payment of the bonds. The money was received with other village funds in trust by the treasurer as agent for the village and could properly be used only for the purpose of paying the bonds. It was the treasurer's duty to apply all funds to the purposes for which they were collected, but in violation of his duty, he misappropriated and failed to account for the funds and for the profits resulting from his wrongful use. Pentis purchased at a discount assessment bonds for his own account, paying therefor from special assessment funds of the city. He subsequently redeemed such bonds with special assessment funds at par, although there were not at any time moneys in any installment involved sufficient to redeem all outstanding bonds against the same at par. He failed to account to the village for the ensuing profit and should be compelled to make full discovery as to each and every such transaction with assessment funds.

The treasurer misappropriated to his own use and refused to account for assessment funds in an amount unknown to plaintiff. Violating his statutory duty, he illegally redeemed some bonds at par and accrued interest in full, although there were not sufficient funds collected to redeem all the issue. He did not issue any call for bonds for retirement or pay any part of the funds so collected upon other bonds drawn upon the same installment, to which a portion of such funds was properly applicable. One Kennedy had secured judgment against the village on account of excessive illegal prorations made by Pentis in the sum of $28,768.77, which the village paid out of its general corporate funds.

All these acts constitute breaches of conditions of the bonds and the principal and sureties are liable to pay the village whatever may be found due upon an accounting. The amount of illegal proration of special assessment funds cannot be determined without complete examination of the records involving transactions in excess of 20,000 in number and an accounting is necessary to determine the amount of liability of each of the sureties. Some misappropriations began under one surety and ended under another. There are no records disclosing just what illegal profits were realized and the relief sought can

be obtained only by resorting to a court of equity in order that a full accounting may be had and discovery of all the facts involved obtained from Pentis.

Upon these averments, plaintiff prayed that Pentis be required to set forth a just and true account of his acts and doings as treasurer; that plaintiff be granted discovery from him as to the facts involved; that an accounting be taken under the direction of the court of all moneys received from the various assessments involved; that it be determined whether Pentis and his sureties are responsible to plaintiff for the amount of the judgment recovered in Kennedy's case; that the exact amount of unlawful profits made by Pentis be ascertained; that he be ordered to make restitution of all misappropriated and misapplied funds and that, upon his failure so to do within a reasonable time, plaintiff as trustee have a decree against defendant and his sureties directing them to repay and restore the trust funds, viz., moneys misappropriated, misapplied or lost and profits illegally retained by Pentis.

Defendants, in their motion to dismiss, insisted that plaintiff had an adequate remedy at law; that the complaint failed to state a cause of action; that Pentis was not required to account for alleged profits; that the village is not a trustee of the funds; that it was not the duty of Pentis to pay to plaintiff any special assessment funds; that plaintiff might not maintain this suit for the reason that it has no interest in the funds and has sustained no damage; that plaintiff was not entitled to a discovery, for the reason that that relief would violate the constitutional privilege of Pentis against self-incrimination, and that the complaint is multifarious in violation of Equity Rule 26,\28 U.S.C.A. following section 723.

The court found defendants' motion well founded, held that the complaint states no cause of action, sustained the motion and dismissed the bill.

Plaintiff insists that the court had jurisdiction of the bill in view of the fact that it sought an accounting, discovery and restoration of trust funds; that the failure of the treasurer to account for special assessment funds held by him as agent for the village constituted a breach of his bond; that public officers must account for all profits made through use of public funds; that the village holds legal title to special assessment funds as trustee therefor and is the proper party plaintiff in an action to recover and restore the same and that the complaint was not multifarious.

Under Chapter 24, sections 109 and 665 of Ill.Rev.Stat.1937, the village treasurer is required to keep all moneys belonging to the municipality in his hands, separate and distinct from his own moneys and forbidden to use them for his own "use and benefit." Under section 112, he is required to keep special assessment moneys "as a special fund" and his official bond is fixed, under section 87, in an amount in part measured by the anticipated collections of such assessments. The latter funds are to be applied solely to the payment of the cost of the improvements for which the assessments are made.

Persons holding assessment bonds have no claim or lien against the village or its general funds; their remedies are against the special assessment moneys. In other words, it is the duty of the municipality, under the statutes of the State of Illinois, in instituting proceedings to create a local improvement and pay therefor by special assessment, to initiate and conduct the proceedings in county court, levy an assessment roll against property owners to recover from them the amount of benefits they receive from the improvement, to collect the assessments and hold them as a trust fund, and to disburse them in accord with the statutory provisions to those holding bonds payable out of the assessments. These provisions furnish a complete code of procedure for the construction of local improvements by special assessments from the beginning of the improvement to its completion, including the final disbursement of money. The municipality is a trustee of the fund, charged with all the duties of such a fiduciary, including the obligation to spread the assessment, collect it and make disbursement thereof in conformity with the statute. The funds are the only source of payment of the bonds and become a trust fund for their payment without preference. Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337; Board of Education v. Norfolk & Western R. Co., 7 Cir., 88 F.2d 462; City of Jacksonville v. Bankers Life Co., 7 Cir., 90 F.2d 141.

Courts of equity have original inherent jurisdiction to decree and enforce trusts and to do whatever is necessary to

preserve them from destruction. 26 R.C.L. Sec. 134. The trustee has the right to the custody and possession of the property included in the trust estate. 65 C.J. 692 and cases cited. It is the trustee's right and duty, and his alone, to proceed by suit or other legal proceedings if necessary to collect or to reduce to possession the property and assets belonging to the estate within a reasonable time, and a failure to perform these duties with due diligence, under certain circumstances, renders him personally liable for the resulting loss. 26 R.C.L. Sec. 131; 65 C.J. 685. Being endowed with legal title to the assets and the obligation to preserve the same, the trustee may maintain any proper action in equity for the protection of the same. 26 R.C.L. Secs. 205 and 214; Chaffin v. Hull, C.C., 49 F. 524, affirmed, Hull v. Chaffin, 4 Cir., 54 F. 437; 65 C.J. 863. A court of equity has jurisdiction of all questions relative to the establishment, enforcement, protection and preservation of a trust on real or personal property, and this jurisdiction ordinarily is exclusive except in so far as a court of law may, by statute or by rules of court, be given jurisdiction. 26 R.C.L. Sec. 223; 65 C.J. 1011, 1012. And persons against whom suit in equity is brought for the restoration or preservation of a trust may not urge estoppel as they might against an individual, nor may they challenge the trustee's right to sue in equity. Thus in Chaffin v. Hull, supra, the court remarked that one who has violated his trust cannot be permitted to raise the defense that the trustee might not sue in equity to collect parts of the trust estate and restore them to the same. The rule applies equally obviously against the privities of such wrongdoer, such as the sureties of the treasurer in the present case.

In view of these somewhat elementary premises, it follows that the contention of defendants that the village was without right to maintain this suit is ill founded. Plaintiff seeks restitution of all moneys found to be due to it as trustee of the various special assessment funds and prays that, upon failure of the treasurer to make restitution, the court shall enter a decree requiring that the treasurer and his sureties pay to the plaintiff as trustee of the various special assessment funds all moneys diverted, misappropriated, misapplied or lost, or any illegal profits retained by Pentis belonging to the village in its corporate capacity, and as trustee. This, in its essence, is a prayer for the protection, preservation and restoration of the trust fund, created by the statutes of the State of Illinois for the protection of bondholders. Of course, the village has no beneficial interest in the funds. It claims none such, but it does insist that, as such a trustee, charged with the statutory duty of administering a trust fund, it shall have the right to reduce to possession that fund and to compel those who have misappropriated it or converted it and those in privity with them to make complete restoration.

It matters not that plaintiff has no financial interest in the fund. It is clearly sufficient that it is a fiduciary charged with the duties of a trustee in collecting, disbursing and administering a trust estate. It matters not that it may not have been injured in a corporate financial sense. It matters not that there is no averment that any bondholder has as yet failed to receive what is coming to him. It is sufficient that there is an allegation of conversion, diversion and misappropriation of trust funds. To whom these diverted funds may belong as beneficiaries, is a question not before us. The immediate prayer is for a restoration of the funds so that they may be administered in accord with the statute and the obligations and duties of the trustee as prescribed by the statutes. Not only in such case has the trustee the right to maintain the suit but if it failed to do so and because of its negligence some part of the trust fund should be lost, there would be a serious question whether, because of its failure to perform its duty as a trustee, it had become directly liable to the beneficiaries of the estate for such negligence. Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337; City of Jacksonville v. Bankers Life Co., 7 Cir., 90 F.2d 141. The city may not be liable for the acts of its officers under the doctrine of respondeat superior but it clearly has a right and an obligation to perform the duties of a trustee imposed upon it by statute.

It is said this is not an express trust. We cannot agree. Active express trusts include all those of which the primary object is to hold the corpus of the property, receive its rents, profits and income and to apply it to prescribed uses. Pomeroy's Equity Jurisprudence, 4th. Ed. Sec. 992. Active express trusts are those in which either from the express directions of the language creating the trust, or from

the very nature of the trust itself, the trustees are charged with the performance of active and substantial duties with respect to the control, management and disposition of the trust property for the benefit of the cestuis que trustent. Pomeroy's Equity Jurisprudence, 4th. Ed., Sec. 991.

What we have said is applicable also to the contention that no cause of action was stated in the bill of complaint. Under the principles announced, the trustee stated an existing cause of action in its behalf. The authorities cited by defendant in no wise vitiate or weaken these conclusions, for we have seen that it is not necessary for the village to have a beneficial interest in the funds; that the question of whether the village becomes liable to third persons for the default of its treasurer is not involved in a suit brought to restore and protect a trust fund; that the liabilities of the trustee to third persons are not now here in controversy.

The trustee is bound to protect the trust property in every reasonable manner during the continuance of the trust. He must, therefore, with due diligence obtain possession of the property and retain it securely under his own control, and he is liable for losses resulting from unreasonable delay in this matter. Pomeroy's Equity Jurisprudence, 4th. Ed., Sec. 1067. The trustee's estate and his power over the subject matter are commensurate with the duties which the trust devolves upon him and are sufficient to enable him to perform all those duties. Consequently he is generally entitled to the possession and management of the property and has the right to compel a performance of the trust according to its terms and intent. Pomeroy's Equity Jurisprudence, 4th. Ed., Sec. 991. Equity jurisdiction is always exercised in suits to recover funds impressed with a trust where a trust relation in view of equity exists between the parties where the plaintiff might recover the same by an action of assumpsit for money had and received or like legal action. Pomeroy's Equity Jurisprudence, 4th. Ed., Sec. 278. It is an original ground of equity jurisdiction to declare and enforce trusts and it is unnecessary, therefore, to obtain relief, that the indebtedness should be established in a court of law. Harris v. Douglas, 64 Ill. 466.

Nor is the premise asserted by the defendants that a municipality is liable directly only when it makes diversion of trust funds for its own use of any fund of any materiality or relevancy in this appeal. The question here is not one of liability of the trustee to third parties. Rather it is solely one of the right of a trustee in equity to sue for the restoration and preservation of trust funds so that the duties of administering them may be performed.

Nor are we impressed with defendants' insistence that the allegations with respect to discovery are insufficient. In the bill it is averred that the village has been able to discover some misappropriations, and these are specifically set forth. It is averred further, however, that there are many other misappropriations; that they are not reflected upon the books; that the treasurer is the only one who can furnish information with reference thereto; that discovery from Pentis is necessary to the successful prosecution of the action; that it is necessary that an examination be made of the books of the various parties with whom Pentis dealt; and that none of this relief can be obtained except by discovery. Incidental to the prayer for relief of restoration of trust funds, these allegations are sufficient, under Sinclair Ref. Co. v. Jenkins Petroleum Proc. Co., 289 U.S. 689, 53 S.Ct. 736, 77 L.Ed. 1449, 88 A.L.R. 496; People v. Bordeaux, 242 Ill. 327, 89 N.E. 971.

Defendants further insist that to require discovery from Pentis is to violate his constitutional privileges. We have never understood that the privilege of refusing to answer incriminating questions is a defense that can be asserted by anyone other than the defendant involved or that it is a matter which must be excused in some way by the person seeking discovery. Defendant Pentis, the treasurer, alone of all defendants, is entitled to that privilege and no other defendants may hide behind it. But we know of no rule of law that requires plaintiff to anticipate that the treasurer will seek refuge in the privilege. Rather it is his duty to make such personal defense, if it is to be made, when he is called upon to perform that which a court of equity may require him to do in making disclosure. It may be that the privilege asserted upon the trial may defeat plaintiff, but it is a personal right which may or may not be relied upon. Plaintiff's position in this respect is fortified by the fact that on the face of the bill it appears that all

prosecutions are barred by the statute of limitations. When the privilege is demanded, the question of whether it can properly be asserted will arise; but not until then. Moore v. Backus, 7 Cir., 78 F.2d 571, 101 A.L.R. 379.

It is said that the allegations with respect to the necessity of an accounting are not sufficient; that an audit would supply all that plaintiff is entitled to. But the complaint avers that many of the transactions wherein relief is sought are not reflected upon the books; that it is impossible to discover by an audit all of the misappropriations; that it is impossible for plaintiff to trace and ascertain all wrongful dispositions of funds; that the items cannot be traced upon the books of the depository bank and that 20,000 transactions are involved. These allegations with others of the complaint are, in our opinion, sufficient to sustain the prayer for accounting, incidental to the main purpose of the bill, the restoration of the trust fund.

It is not our duty at this time, nor was it that of the trial court, to determine whether all of the demands made may be recovered. Whether profits acquired by Pentis were legitimate; whether they are properly a part of the trust funds is dependent largely upon the proof to be submitted at the time of the trial; that the averments of fact are insufficient to create a legal liability under the statute of Illinois cannot be asserted as a matter of law from the face of the bill. The allegations in this respect are that the treasurer has retained profits which in fact belong to the trust fund, and, therefore, should be repaid to it. It hardly lies within the rights of defendants to assert as a rule of law that a public servant who has profited secretly from trust funds may not with his sureties be held liable therefor, for whether the liability exists is to be determined from the facts when fully heard. That public servants may not profit at the expense of those whom they serve must be admitted. Concerning such acts the Supreme Court of Illinois said in People v. Small, 319 Ill. 437, at page 481, 150 N.E. 435, at page 453: "Where a treasurer or other public official has the custody of public funds and such funds earn interest, he is required by the settled law of this state to turn such interest into the public treasury as soon as it is received by him. County of Lake v. Westerfield, 273 Ill. 124, 112

N.E. 308, Ann.Cas.1918E, 102; Hughes v. People, 82 Ill. 78. This is now, and has always been, the law in this state, without regard to a statute on the subject. This liability to account for profits made on public funds is the same whether the interest or discount is paid to the officer directly as such, or whether it comes to him indirectly as a partner or stockholder in a bank where public funds are deposited. Whitney v. Peddicord, 63 Ill. 249. Where it is established that a public official having public funds in his custody deals with the trust money in his own name, directly or indirectly, every presumption is indulged against the trustee, and he is held to a strict accountability for the conversion. White v. Sherman, 168 Ill. 589, 48 N.E. 128, 61 Am.St.Rep. 132."

Plaintiff as a municipality, charged with the duties of a trustee in collecting and administering special assessment funds, alleges that it has discovered that its agent has for a number of years been false to his trust; that he has misappropriated parts of said trust funds; that he has misapplied others; that he has profited secretly from the funds; that some of the transactions began in the term of one surety and ended during the terms of other sureties; that over 20,000 transactions are involved; that the books of the village do not fully disclose the facts; that an audit is insufficient to furnish the information demanded, and asks that the court restore the trust estate; that defendants make discovery in so far as possible; that an accounting be had; that the trust funds be restored and replaced in its hands for administration. Obviously under the allegations plaintiff was not in position to describe with definiteness and specifically each and every act complained of. Were it so, plaintiff would need no discovery and no accounting. But it is the difficulty encountered in ascertaining the facts that persuades a court of equity that it shall lend an open ear and a helping hand to determine whether, as alleged, trust funds have been dissipated and should be restored.

Nor do we deem the bill multifarious. Courts of equity, under modern rules of pleading, have inclined toward greater liberality in this respect. The modern rules require that all parties interested in related and interwoven causes of action shall be brought before the court in order that all issues may be determined

and circuity and multiplicity of actions avoided. Marcus Brown Holding Co. v. Feldman, D.C., 269 F. 306, at page 310, affirmed 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877; General Electric Co. v. Alexander, 2 Cir., 280 F. 852 at page 856. Here the treasurer and his sureties in different years are parties defendant. It is alleged that some of the wrongful acts began during the term when one defendant was surety and ended in terms when other defendants were sureties and that the presence of all of them is necessary to determine their respective liabilities and when they began and ended. True a separate cause of action might be brought against each surety, but this would not bring about all the relief to which plaintiff is entitled. Whatever may have been the rule in an age of stricter pleading, we believe that under the allegations of this bill, it is not multifarious. The main purpose is the recovery, restoration and preservation of a trust fund alleged to have been decreased, damaged and injured by the acts of the principal defendant over a period of years in transactions beginning in one term and ending in others. Incidental to the main relief, discovery of the true facts and a true accounting are prayed. The presence of all sureties is necessary in order that a court of equity may dispose of all issues arising from the common source.

The decree of the District Court is reversed and defendant will pay the costs.