**CITY NATIONAL BANK, Plaintiff,**

v.

**CHASE MANHATTAN BANK,
Defendant.**

No. 85 C 20301.

United States District Court,
N.D. Illinois, W.D.

May 9, 1989.

James W. Keeling, Thomas, Hinshaw & Culbertson, Rockford, Ill., for plaintiff.

Scott C. Sullivan, Williams & McCarthy, Rockford, Ill.

Lawrence R. Moelmann, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for City Nat. Bank & Trust Co.

William J. Noble, Sidley & Austin, Chicago, Ill., for defendant.

Anthony C. Valiuis and Deborah L. Schmitt, Much Shelist Freed Denenberg Ament & Eiger, Chicago, Ill., for Travelers Ins.

## MEMORANDUM OPINION AND ORDER

ROSZKOWSKI, District Judge.

This action comes before the Court on plaintiff and counter-defendants' motion to dismiss defendant and counter-plaintiff's amendment to the amended counterclaim. For the reasons set forth in the opinion below, the Court grants plaintiff and counter-defendants' motion to dismiss.

### BACKGROUND

Travelers Insurance Company entered into a group annuity contract (No. GR–11051) with the trustees of the Barber–Colman Company Profit Sharing Trust, which contract was effective June 26, 1980. Pursuant to the group annuity contract, the trustees invested funds of the profit sharing trust with Travelers for the benefit of some of the plan's participants. For their part, Travelers agreed to disburse the invested funds upon the occurrence of certain events which were specified in the contract.

The trustees then appointed George E. Couper, an independent insurance broker doing business in the Rockford area, to be the administrator and agent of the plan and to service the plan pursuant to the contract with Travelers. During the time period relevant to this action, Couper maintained one or more accounts at City National Bank & Trust Co. of Rockford and had an ongoing relationship with City National Bank & Trust Co.

The procedure for disbursement of any of the funds involved the execution by a participant of a termination form and the submission of that form to Travelers. In accordance with customary practice in the industry, those forms were actually given to Couper who then forwarded the executed forms to Travelers.

Beginning in 1980, and continuing periodically until March, 1984, Travelers received termination forms which appeared to be properly executed and signed by the respective participants. Upon receipt of these termination forms, Travelers issued checks for the requisite amounts payable to the participants and mailed the checks to Couper.

It has since been learned that although some of the termination forms were, in fact, signed by the plan participants, some of those forms may have been forged by Couper.

Upon receipt of the checks from Travelers, Couper fraudulently endorsed the checks by forging the name of the payee (participant) and depositing the checks into an account Couper maintained at City National Bank & Trust Co. of Rockford. Thereafter, Couper withdrew those funds from the City National Bank account and used them for his own personal purposes. The total face amount of the converted checks was $342,724.24. The checks issued by Travelers were written on Travelers' accounts maintained at either the Connecticut National Bank or Chase Manhattan Bank, N.A. Of the $342,724.24 converted by Couper, $229,182.79 were written on the Chase Manhattan Bank account and $113,-541.45 were written on the Connecticut National Bank account. After the checks were deposited with City National Bank, City National Bank collected the funds from Chase Manhattan Bank and Connecticut National Bank. In February, 1985, Travelers and the trustees of the Barber–Colman Company Profit Sharing Trust each agreed to contribute fifty percent (50%) of the loss occasioned by Couper's embezzlement scheme into an escrow account. The funds in that escrow would be used to reimburse the plan participants whose monies Couper had embezzled. Pursuant to that agreement, Travelers deposited $212,000.00 into the escrow account.

In Count IV, defendant and counterplaintiff Travelers Insurance Company alleges the following: the checks deposited by Couper into the City National Bank account were all in substantial amounts and lacked objective indicia from which City National Bank could have reasonably concluded that Couper was authorized to negotiate those checks; City National Bank knew or should have known that Couper was not authorized by the payees to cash or deposit the checks; City National Bank took no reasonable steps to investigate Couper's authority to either negotiate the checks or to deposit the collected funds in his own account; pursuant to the contract, as holder of the funds, and as drawer of the checks under U.C.C. § 3–403(2)(a), Travelers was obligated to the plan participants for the face amount of the checks, therefore, as payees of the checks, the plan participants had the right under U.C.C. § 3–419(1)(c) to proceed against City National Bank and Connecticut National Bank for conversion—and to the extent Travelers has paid the plan participants *via* the escrow account, Travelers is subrogated to these claims.

In Count V, Travelers alleges that City National Bank and Connecticut National Bank owed a duty of care in handling the checks to the plan participants, and in negligently paying the checks over forged endorsements by Couper breached its duty of care to the plan participants. Again, Travelers alleges that to the extent Travelers has paid the plan participants *via* the escrow account, Travelers is subrogated to the plan participants' claims against City National Bank and Connecticut National Bank for negligence.

In both Counts IV and V, Travelers prays for declaratory relief stating that Travelers is subrogated to the claims of the plan participants and declaratory relief stating that Travelers is entitled to reimbursement from City National Bank and Connecticut National Bank for the amount of Travelers' payment into the escrow account.

City National Bank and Connecticut National Bank have moved to dismiss the amendment to the amended counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. It is the position of City National Bank and

Connecticut National Bank that only the trustees have standing to sue to recover assets for the trust, that the plan participants can only sue to recover against the plan or against the plan's fiduciaries; therefore, Travelers cannot be subrogated to claims against City National Bank and Connecticut National Bank as the plan's participants have no standing to sue as against those parties.

## DISCUSSION

In analyzing a motion to dismiss, the Court will not dismiss the complaint unless it is clear that no set of facts which plaintiff could prove consistent with the pleadings would entitle plaintiff to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Murphy v. Lane*, 833 F.2d 106, 107 (7th Cir. 1987); *Vaden v. Village of Maywood*, 809 F.2d 361, 363 (7th Cir.), *cert. denied*, 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). The Court will accept all well-pleaded factual allegations in the complaint as true. *Vaden*, 809 F.2d at 363; *Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414 (7th Cir.1986). In addition, the Court will view the allegations in the complaint in a light most favorable to the non-moving party, in this case the defendant and counter-plaintiff, Travelers Insurance Company. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1104 (7th Cir. 1984); *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

The central question presented in the instant motion to dismiss the amendment to the amended counterclaim is whether Travelers has standing to sue as subrogee to the rights of the plan participants.

In order for Travelers to have standing to sue as subrogee to the rights of the plan participants, three prerequisites must be satisfied. First, the claim or debt under which the subrogee asserts his rights must have been paid in full, *see, e.g., Medigroup, Inc. v. Schildknecht*, 463 F.2d 525, 528 (7th Cir.1972); *Village of Crainville v. Argonaut Insurance Co.*, 81 Ill.2d 399, 410 N.E.

2d 5, 7, 43 Ill.Dec. 5, 7 (1980), and the claim or debt must not have been paid by the subrogee voluntarily. Second, the subrogee must have paid on a claim or debt for which a third party—not the subrogee—is primarily liable either in law or in equity. *See City of Hillsboro ex rel. International Insurance Co. v. Springfield Mechanical Co.*, 75 Ill.App.3d 154, 394 N.E.2d 30, 32, 31 Ill.Dec. 114, 116 (5th Dist.1979). And third, the subrogor must possess a right which he could enforce against the third party and the subrogee is attempting to enforce that right of subrogor. *American National Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 461 (7th Cir.1982).

In the instant case, the subrogee paid subrogor's debt in full, the payment was not voluntary and the subrogee paid on a debt for which the third party was primarily liable. Thus, the first two prerequisites are satisfied. The final prerequisite, however, poses some difficulty and is worthy of some extended discussion. The final prerequisite mandates that the subrogor must possess a right which is enforceable against the third party and the subrogee must be attempting to enforce that right. In order to determine whether the plan participants or beneficiaries in the instant case had an enforceable right against plaintiff/counter-defendant banks, we must look to the Employee Retirement Income Security Act (ERISA). 29 U.S.C.A. § 1001 *et seq.* (1985).

It is noteworthy that in this Court's previous order in this case, dated June 6, 1988, the Court stated that "the actual loss fell upon the pension plan." This Court there held that the individual plan participants and beneficiaries sustained no actual loss; rather, the plan itself sustained the loss. For these losses incurred by the plan itself, the plan, through its trustees, have the sole right to sue for recovery. Therefore, the plan participants and beneficiaries derive their causes of action, if any, from the ERISA statute itself.

ERISA explicitly provides five separate subsections outlining civil causes of action which may be brought by a plan participant or beneficiary. 29 U.S.C.

§ 1132(a)(1)—(a)(4).[1] This subchapter is very specific about who may sue under ERISA and the particular subject matter amenable to suit for those potential plaintiffs.

Plaintiff/counter-defendants argue that none of the causes of action enumerated in the statute allow the beneficiaries or plan participants to sue third parties on behalf of the plan; therefore, Travelers could not maintain the instant cause of action as they can take or enforce no more rights as subrogee than the plan participants had as subrogors. It is necessary, then, to determine what rights the plan participants had under ERISA and under the plan.

Section 1132(a)(1)(A) provides for a civil cause of action by a plan participant or beneficiary for refusal of an administrator to supply information pursuant to section 1132(c). This subsection is clearly inapplicable to the present factual circumstances and there has been no allegation of failure to comply with section 1132(c).

Section 1132(a)(2) allows civil suit by the Secretary, or by a participant, beneficiary or fiduciary for monetary damages and other equitable and remedial relief for breach of fiduciary responsibility.[2] In the instant case, neither Couper nor the two banks fit into the definition of a fiduciary provided in the statute as they had no discretionary authority, control or responsibility in the administration of this plan. In fact, Couper merely served as a "pass-through" mechanism—passing claims forms to Travelers and, in turn, in theory at least, passing checks on to the participants or beneficiaries. As to the two banks, City National Bank and Connecticut National Bank, they merely paid out on the forged instruments. The banks may have had various obligations, responsibilities and duties pursuant to the Uniform Commercial Code, but neither of the banks were invested with any discretionary control or authority with respect to the plan. Therefore, section 1132(a)(2) is inapplicable to the instant case.

Section 1132(a)(3) allows maintenance of a civil cause of action, for injunctive or other equitable relief *only*, for violations or enforcement of ERISA or the terms of the plan or to redress such violations. The instant action is for money damages only. No injunctive or other equitable relief is sought and, therefore, section 1132(a)(3) does not apply here.

Section 1132(a)(4) grants a cause of action to the Secretary, or to a participant or beneficiary, for appropriate relief for a violation of certain reporting requirements set out in section 1025(c). Again, there is no allegation of reporting requirement violations and the facts would not support any

---

1. 29 U.S.C. § 1132 provides as follows:
    (a) Persons empowered to bring a civil action
    A civil action may be brought—
    (1) by a participant or beneficiary—
    (A) for the relief provided for in subsection (c) of this section, or
    (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the Plan;
    (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
    (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
    (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title; ...
    29 U.S.C. § 1132(a)(1)—(a)(4).

2. ERISA defines a fiduciary as follows:
    [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders *investment advice for a fee or other compensation*, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.
    29 U.S.C.A. § 1002(21)(A) (1985). Section 1105(c)(1)(B), referred to in section 1002(21)(A), merely allows a "named fiduciary to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." 29 U.S.C.A. § 1105(c)(1)(B) (1985).

if alleged. Therefore, section 1132(a)(4) has no application to the case at bar.

Section 1132(a)(1)(B) allows civil suit by a participant or beneficiary to recover benefits, enforce rights or clarify future rights under the terms of the plan. In the facts as presented to this Court, there can be no recovery of benefits by the participants or beneficiaries based on Couper's misconduct as Travelers has already obviated that necessity by making the plan whole and covering any and all losses. In addition, there is no need to clarify future rights under the plan, nor has any party alleged such a potential cause of action. In any event, that type of clarification would give rise to declaratory or injunctive relief, a far cry from the money damages sought by Travelers. The last potential cause of action provided for in section 1132(a)(1)(B) allows a participant or beneficiary to enforce rights under the terms of the plan. The express terms of the plan appear to provide a participant or beneficiary with a right to contribution to the plan by the company according to the formula specified in the plan. CNB Exhibit 108 at 3–4 & 7–9. In addition, the participants also appear to have a right to payment of their accumulated share pursuant to the conditions set out in the plan. CNB Exhibit 108 at 4–5 & 13–20. This appears to be the extent of the interest of the participants and beneficiaries in the plan or trust.

Count IV of Traveler's amendment to the amended counterclaim identifies numerous causes of action the participants or beneficiaries have as against the two banks, City National and Connecticut National. However, all of the causes of action alleged by Travelers are actions maintainable under the Illinois Uniform Commercial Code, 26 Ill.Rev.Stat.Ann. § 1–101 *et seq.* However, these are purely state law claims and there is no independent basis for federal jurisdiction except the jurisdiction which may be specifically provided for in the ERISA statute. ERISA provides no basis for jurisdiction pursuant to the U.C.C. unless enforcement of the provisions of the Illinois U.C.C. is the legal equivalent of the enforcement of rights "under the terms of the plan." Then, and only then, would a plan partici-pant or beneficiary be allowed to bring a Uniform Commercial Code claim against the banks under section 1132(a)(1)(B) of ERISA. Therefore, we hold that section 1132(a)(1)(B) provides no such cause of action based solely on the provisions of the Illinois Uniform Commercial Code; a suit under the U.C.C. is not a suit to "enforce [a participant's] rights *under the terms of the plan.*" 29 U.S.C. § 1132(a)(1)(B) (emphasis added).

Therefore, the right of a particular participant or beneficiary to sue for enforcement of rights under the plan pursuant to section 1132(a)(3) would be limited to suit for contribution by the company or payment to the participant or beneficiary pursuant to the trust agreement. *See Village of Brookfield v. Pentis,* 101 F.2d 516, 521 (7th Cir.1939); *see also Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985) ("ERISA permits suits to recover benefits *only* against the plan as an entity ... and suits for breach of fiduciary duty only against the fiduciaries ..") Neither of the aforementioned causes of action are proffered by Travelers in the instant case; therefore, section 1132(a)(3) does not provide a cause of action against City National Bank or Connecticut National Bank by the participants or beneficiaries of the plan.

The instant circumstances do not give rise to a cause of action under ERISA or the plan to the participants or beneficiaries as against City National Bank or Connecticut National Bank. Therefore, Travelers must fail in its subrogation action as it fails to meet the third prerequisite for a subrogation action, namely that the subrogor must possess a right which he could enforce against the third party and the subrogee, Travelers, is attempting to enforce that right of the subrogor. In this case, the plan participants and beneficiaries have no right to sue third parties on behalf of the plan except as provided for in the statute.

## CONCLUSION

For the reasons set forth in the opinion above, the Court grants plaintiff/counter-

defendant's motion to dismiss defendant/counterplaintiff's amendment to the amended counterclaim as Travelers has no standing to sue.