(No. 21073.—
MELVILLE N. ROTHSCHILD, Defendant in Error, *vs.* THE VILLAGE OF CALUMET PARK, Plaintiff in Error.

*Opinion filed October 22, 1932—Rehearing denied Dec. 7, 1932.*

HAROLD L. SUMMERFIELD, and MALONEY & WOOSTER, for plaintiff in error.

JOHN W. CREEKMUR, (ROBERT N. ERSKINE, and D. E. HOOPINGARNER, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The defendant in error, Melville N. Rothschild, was the owner of $40,500 of local improvement bonds of the village of Calumet Park, the plaintiff in error, issued against and payable out of various installments of special assessment proceedings Nos. 2, 6, 11, 12, 13 and 14 of the village, the first installments of assessments Nos. 2 and 6 being payable in 1920 and those of Nos. 11, 12, 13 and 14 being payable in 1921. He filed a bill in equity in the circuit court of Cook county against the village charging the collection by the village, as the several installments have matured, of parts of such assessments amounting annually since 1920 to large sums of money, which it became the village's duty to pay to the holders of the bonds; the commingling of all the funds collected on the various installments; the payment of certain bonds to an amount in excess of the collections applicable to such bonds and the failure to make payments on other bonds issued in anticipation of the collection of such installments, and the intention of the defendant to continue such intermingling of the funds and such unlawful payments unless enjoined by the court. The bill further charges that the defendant has not kept, and is not keeping, proper records of payments made on said installments of either principal or interest; that some records show that certain sums of money have been collected but do not show the disposition of them; that separate records have not been kept showing the collections of interest on the several assessments or the installments thereof, and that the records do not show that on certain assessments money has been collected and the proportionate part of such collections has not been paid out on the bonds held by the complainant. The bill prays for an accounting of all money collected by the defendant on each and all of the installments and of the distribution and payment of the money collected; that a decree may determine whether such payments have been made in conformity with the requirement of the statute; that all over-pay-

ments, if any, be ascertained; that the defendant be decreed to pay to the complainant anything that shall appear to be due him upon such accounting, and that the complainant may have other specific relief and general relief. The defendant answered the bill and filed a cross-bill, which was answered, and the cause was referred to a master, who made a report, exceptions to which were overruled, and a decree was entered by the chancellor in favor of the complainant and against the defendant for $30,904.45 and for other relief, from which the defendant appealed to the Appellate Court for the First District, where the decree was affirmed. A petition filed by the village for a writ of *certiorari* was allowed.

The complainant introduced his evidence before the master and rested, and thereupon the defendant made an oral motion to dismiss the bill for the reasons (1) it was without equity; (2) the complainant had an adequate remedy at law; (3) the complainant failed to establish any facts or circumstances upon which a claim for equitable relief could be based; (4) only legal rights are involved and complainant should be remitted to his action at law; and (5) neither the bill nor the evidence furnishes any basis for an accounting in equity. The objections were ordered to stand as exceptions, were overruled, and a decree was entered as stated.

The assignments of error in the Appellate Court were, in substance, that the decree was contrary to the law and the evidence, that a court of equity had no jurisdiction of the subject matter, the court erred in overruling the exceptions to the master's report, in not remitting the complainant to his remedy at law, and in decreeing that the funds collected on each special assessment installment should be paid *pro rata* upon all bonds of each installment. Errors of the Appellate Court assigned in this court are, in not considering the plaintiff in error's brief on the question of prorating moneys collected on special assessments, in failing to construe section 43 of the Local Improvement act, in failing to distinguish be-

tween an ordinary trust fund and a statutory trust fund, and in affirming the judgment of the circuit court.

No objection is made and argued to any finding of fact in the decree, and the principal contention of the plaintiff in error is, that the Local Improvement act does not contemplate prorating among the bondholders the special assessment collections but makes it the duty of the municipality to use the collections on hand from time to time to retire in full as many bonds as it is able to pay. This contention is based upon section 43 of the Local Improvement act. A correct construction of this section requires a consideration of other sections of the act and of the character of the contract created by the issue of the bonds. Section 86 provides for the issue of bonds to anticipate the collection of the second and succeeding installments, payable out of such installments. Each bond must state on its face out of which installment it is payable and state by number or other designation the assessment to which such installment belongs. The section further provides: "The principal of such bonds shall not exceed, in the aggregate, the amount of such deferred installments, and shall be divided into as many series as there are deferred installments: Provided, nothing herein contained shall be construed to prevent the payment of any voucher or bond out of an installment having a surplus to its credit, other than the one against which the same is issued. The intent and meaning thereof being that in case from any cause the installment against which such bond or voucher is drawn has not sufficient money to the credit thereof to pay the same, the entire amount of the assessment or any installment thereof may be applied toward the payment of any such vouchers or bonds issued against the assessment." The purpose of the last sentence quoted is manifestly to make it clear that any surplus in any installment over the amount required to pay the bonds and interest payable out of the installment may be applied to the payment of any bond or voucher drawn against another installment

which has not sufficient money to pay it. Each installment is independent of every other, except that a surplus in one may help out a deficit in another. Section 86 also provides that the bonds of any series shall become due at some time to be fixed by the municipal officers, in the year when the corresponding installment will mature, such date to conform, as nearly as may be, to the time when such installment will be actually collected, to be estimated by the municipal officers issuing the bonds. Each bond also contains the statement that it is issued to anticipate the collection of a part of a specified installment of a designated assessment and is payable solely out of said installment when collected. Section 89 provides that any owner may pay his assessment wholly or in part with the bonds or vouchers issued on account of such assessment, applying, however, the bonds and vouchers of each series to the payment of the installment to which they relate. Section 42 provides that the first installment shall be due and payable on the second day of January next after the date of the first voucher issued on account of work done, the second installment one year thereafter, and so on, annually, until all installments are paid, and that any person may at any time pay the whole assessment against any lot, piece or parcel of land, or any installment thereof, with interest as provided therein up to the date of payment. Thus, payments of the various installments of a special assessment may be paid when due or before or after, and if paid before due it became necessary to provide for retiring unmatured bonds of any series payable out of installments which had been paid before they became due. To provide for this case section 43 of the act of 1897 was enacted, as follows: "On or before January tenth of each year the treasurer of the municipality issuing such bonds, or some other officer designated by ordinance for that purpose, shall ascertain the amount of such assessment collected and applicable to the payment of bonds of each series unmatured, and shall select by lot bonds of series, to such amount, to be paid there-

with, and shall give notice in some newspaper published in such municipality (or if none be so published, then in the nearest newspaper), of the number of bonds to be so paid, the series thereof, the assessment to which they relate, and the particular bonds so selected to be paid, and that the same will be paid, at a place to be specified, on the tenth day of February next following. And, thereupon, from and after said tenth day of February, said bonds shall be payable, at the place so appointed, on demand, and no further interest shall accrue thereon." This section expressly refers only to the amount of the assessment collected and applicable to unmatured bonds, and therefore refers only to installments paid in advance, the bonds issued against which are not yet due. The statute provides that funds being in hand applicable to the payment of the unmatured bonds, but not enough to pay all, the number which can be paid shall be selected from the series to whose payment the funds are applicable and they shall be paid.

In the session laws of 1927, on page 253, appears the following act:

"An act to amend sections 11, 44, 63, 76 and 79 of 'An act concerning local improvements,' approved June 14, 1897, as amended.

*"Be it enacted by the People of the State of Illinois; represented in the General Assembly:*

"Section 1. Sections 11, 44, 63, 76 and 79 of 'An act concerning local improvements,' approved June 14, 1897, as amended, are amended to read as follows:

"Section 11. * * *

"Section 43. Whenever sufficient funds are on hand for that purpose the treasurer of the municipality shall select by lot bonds of series, to such amount, to be paid therewith and shall send notice by registered mail to the address of the original purchaser (or known present or subsequent owner) of each of such bonds, as set out in the treasurer's records, stating that the designated bonds will be paid thirty (30) days

thereafter at his office and the treasurer also shall give notice in some newspaper published in such municipality (or if none be so published, then in some newspaper published in the county in which such municipality is situated), of the number of bonds to be so paid, the series thereof, the assessment to which they relate, and the particular bonds so selected to be paid, and that the same will be paid, at said time and place to be specified. And thereupon, from and after such specified date of payment, said bonds shall be payable at the place so appointed, on demand, and no further interest shall accrue thereon. The mailing and publishing of notice may be ommitted [omitted] if the bonds called for payment are presented for payment."

Then follow sections 44, 63, 74a, 76, 79 and 81. Sections 43, 74a and 81 are not mentioned in the title of the act or in the enacting clause. The act does not purport to amend section 43. Whatever is said in the paragraph bearing the number "43" has no connection with the act, is no part of it and is of no effect. Original section 43 remains in force unaffected by the act in question.

Statutes are, as a general rule, prospective, only, in their operation, and they will not be construed to have a retrospective operation unless the language used in the statute is so clear that it will admit of no other construction. (*White Sewing Machine Co.* v. *Harris,* 252 Ill. 361; *Dunne* v. *County of Rock Island,* 283 id. 628; *O'Brien* v. *Chicago City Railway Co.* 305 id. 244.) The bonds in this case were issued in 1920 and 1921. They contained on the face of each bond the statement required by section 86, "this bond and the interest thereon are payable solely out of" a specified installment of a designated assessment. This was a contract binding on both the village and the bondholder, and even if that which is now relied on by the plaintiff in error as an amendment of section 43 were a valid amendment, it contains no language requiring or justifying a construction that it was intended to apply to these previous valid con-

tracts by authorizing the collections from installments out of which, alone, the defendant in error's bonds were payable, to be distributed among an indefinite number of bonds selected by chance.

It is contended that the complainant's remedy at law is adequate and equity has no jurisdiction. There are two sufficient grounds upon which the jurisdiction of equity rests. The complainant's claim is for money had and received to the complainant's use and could be the basis of an action of assumpsit, but the amount of it could be ascertained only by an investigation of the accounts of the defendant, the books and papers in the possession of its officers, the books of the city collector, those of the county collector, the tax judgment, sales, redemption and forfeiture records of the county court for several years, all constituting a great volume of intricate accounts which could not be presented to a jury in such a manner as to enable them to arrive at a satisfactory conclusion as to the amount due. In such cases it is well settled that a court of equity has jurisdiction to entertain a bill for an accounting. An entire absence of a remedy at law is not necessary but the inadequacy and impracticability of the remedy is equally effective to furnish a ground for equity jurisdiction. (*Ely* v. *King-Richardson Co.* 265 Ill. 148; *People* v. *Small,* 319 id. 437.) The jurisdiction of equity for the enforcement of trusts is another ground of its jurisdiction in this case. The enforcement of trusts is peculiarly within the province of a court of equity, and a case which has for its object the enforcement of a trust is a case in equity. Equitable jurisdiction is not taken away by the fact that the complainant has a remedy at law. (*Howell* v. *Moores,* 127 Ill. 67; *People* v. *Bordeaux,* 242 id. 327.) We have held that the proceeds of special assessments are trust funds for the payment of the bonds issued for the cost of the improvement. (*Conway* v. *City of Chicago,* 237 Ill. 128.) The theory of the statute is, that the bonds issued against each installment of the assessment, to-

gether with the interest on them, will be paid as the install-
ment and the interest on it are collected. The installments
are payable on January 2 of each year and the bonds will
be due at a later date in the same year. The installments
are the only source of payment of the bonds, and when they
are collected by the municipality the money received becomes
a trust fund for the payment of the bonds to the holders,
without preference among them. If for any reason the full
collection of an installment is not made the deficiency must
fall upon the bondholders, and equity requires that the loss
shall be borne ratably by each bondholder. Therefore, when
the bonds of any year become due and the collection from
the installment of that year is insufficient to pay them, the
bondholders are entitled to the amount collected, and it is
the duty of the trustee—the municipality—to pay upon each
bond issued against the installment its share, *pro rata,* of
that amount. The fact that payments on other unmatured
installments have been made in advance does not affect the
payment of the bonds of the current year. Section 43 of
the statute provides the manner in which those payments
shall be paid on the bonds to which they are applicable.

The court found, in accordance with the evidence, that
during the series of years since the levy of the special as-
sessments involved in this case, the village, through its col-
lector and the county collector, had received certain amounts
of money from the payment of the respective installments of
the various assessments in anticipation of whose payment
the village had issued the bonds owned by the defendant in
error. The evidence shows that the defendant in error's
bonds amounted to $40,500 out of the total issue under the
six assessments; that they were all presented and demand
of payment made between 1924 and 1928 and were past due
and unpaid; that the village collected a part of the several
installments against which the defendant in error's bonds
were issued; that the money so collected constituted a trust
fund and the village became a trustee of the money so col-

lected for the use of the holders of bonds issued against the several installments, and it became the duty of the village, as such trustee, to pay the funds so collected from each of the several installments of each assessment in *pro rata* proportion upon each of the bonds, respectively, issued against the several installments; that by reason of such collection the village has become liable to the complainant for money had and received to the extent and proportion that funds have been collected applicable to the bonds of which he is the owner, and is now directly liable, as for money had and received, to pay that percentage of the face value of the several bonds owned by the complainant which the amount collected and chargeable to the village bears to the total amount of bonds issued against the respective installments, and that the village, by reason of having collected and received the money applicable to and payable upon the bonds, also became directly liable for interest, at the legal rate of five per cent per annum, upon the amount so due upon each bond from the date of the maturity thereof; that the total amount due and owing from the village to the complainant upon his several bonds, including interest thereon to the date of the decree, is $28,438.83; that the village has also collected with and as a part of such several installments of the special assessments, interest to the extent and in proportion to the amounts collected for and as a part of the principal of said several installments, and the village became liable, also, as a trustee of such funds so collected, for interest, and it became its duty as such trustee to pay the funds so collected on account of interest in *pro rata* proportion upon each of the coupons representing interest on the bonds, respectively; that by reason of such collection of interest the village has become liable to the complainant for money had and received to the extent and proportion that funds have been collected appliable to the payment of such interest, and is liable for interest, at the legal rate of five per cent per annum, upon the amount so collected and payable upon such

interest from the date of such interest becoming due, and that the total amount due the complainant for such interest to the date of the decree is $2465.62. Thereupon the court rendered a decree for the amount of the money in the hands of the village, as trustee, for payment on the bonds owned by the defendant in error, for principal and interest, in the sum of $30,904.45.

The plaintiff in error objects to the decree because of the award of interest to the defendant in error from the maturity of the bonds and coupons to the date of the decree. The bonds and the coupons do not provide for the payment of interest after maturity, and it is argued that there is no provision in the Local Improvement act for the payment of interest on any bond after the maturity of the bond, or the assessment levied to pay the bond, or on any past due coupon. The liability of the village for interest in this case is not based upon its undertaking to pay interest. The suit is brought to enforce its liability, as trustee, to pay to the holders of the bonds the money which it received for that purpose, and it is the same, in effect, as an action of assumpsit for money had and received. Interest is allowed in such actions, under section 2 of the Interest act, on money had and received to the use of another and retained without the owner's knowledge. The plaintiff in error was properly charged with interest on the amount received which should have been paid to the defendant in error. (*Conway* v. *City of Chicago, supra,* and cases there cited.) It is true that the Local Improvement act furnishes a complete code of procedure for the construction of local improvements by special assessment, from the initiation of the improvement to its completion and the collection of the money for its payment, but when the municipality which has made the improvement and collected the money to pay the bonds used in its construction fails in its duty to pay the bondholders, the latter may enforce their rights in accordance with the rules which prevail in other cases where money has been

received to the use of another and retained without his knowledge.

Objection is also made to the decree because it is said that it does not appear that the city has paid the money it has collected to bondholders other than the defendant in error or that it has improperly paid to other bondholders more than their proportionate share. That is no answer to the claim of the defendant in error. His complaint is that the village collected the money for the payment of all the bondholders *pro rata* and that it did not pay him *pro rata*—not that it paid somebody else more than his share. It is argued that the burden of proof is on the complainant to show that the money had been improperly applied elsewhere. This is not so. When the defendant in error had shown that the village collected the money applicable to the payment of his bonds and had not paid them, he had met the burden imposed upon him and was entitled to judgment unless the plaintiff in error showed a valid defense.

By the decree it was further ordered that the village, by its president and board of trustees, should appropriate in the year 1931, by ordinance, in accordance with the law of Illinois, an amount sufficient to pay the balance then remaining due and unpaid on account of the judgment entered by the decree against the village, together with an amount estimated to be sufficient to pay interest on the balance from the date of the decree up to July 1, 1932, and that the village should report to the circuit court, as of the first day of the first fiscal quarter of the village for the year 1931, the balance of the judgment then remaining unpaid, with the amount so estimated to be sufficient to pay interest thereon and for which such appropriation is to be made, and the village should pass any and all necessary ordinances and take such further proceedings as might be required under the laws of Illinois to levy sufficient taxes to meet the appropriation so made in the year 1931 and to collect such taxes thereafter in due course of law. The decree further

provides that the village and the treasurer then in office shall collect such taxes levied in accordance with the terms of the decree and pay and deliver all of such taxes to the defendant in error on account of the judgment and decree, and such payments shall be made from month to month as such taxes shall be collected and received by the village and its treasurer; that the village shall complete the records of the village pertaining to the collection of the several special assessments so that the collection records of the village shall show all collections that have been made by or in behalf of the village, whether by the village collector or by the county collector and county treasurer, either by voluntary payment or by tax sale, and as to each separate lot, piece or parcel of land against which assessments have been levied. It was further ordered that the village, through its officials and attorneys, should institute and prosecute appropriate proceedings to enforce the payment of delinquent and unpaid assessments, and all installments thereof, by foreclosure proceedings against each and all of the lots, pieces and parcels of land assessed for the several improvements pursuant to the statutes of Illinois.

While a court of equity may take jurisdiction of a proceeding to enforce a trust where the officers of a municipality have been guilty of a breach of the trust in the performance of their duties, it will not take charge of the management of the affairs of the municipality and direct the course of conduct to be pursued in regard to the performance of duties by those who may be officers of the municipality in the future. Because the officers have failed, either ignorantly or willfully, to perform their duty, the court will not assume that they will continue to do so after an adjudication of the court has determined that their course was wrong.

The decree will be affirmed so far as it directs the payment of money by the village to the defendant in error. So far as it purports to direct the course of conduct of the

officers of the village in regard to these special assessments for the future it will be reversed. The plaintiff in error will pay three-fourths of the costs and the defendant in error one-fourth.

*Affirmed in part and reversed in part.*