**CITY OF JACKSONVILLE v. BANKERS LIFE CO. et al.**

**No. 6036.**

Circuit Court of Appeals, Seventh Circuit.
May 8, 1937.
Rehearing Denied June 19, 1937.

142

E. W. Cleary and Orville N. Foreman, both of Jacksonville, Ill., and Dayton Ogden, of Chicago, Ill., for appellant.

Samuel K. Markman, Thomas C. Donovan, John P. Sullivan, and Henry O. Nickel, all of Chicago, Ill., and R. L. Northcutt, of Beardstown, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

## LINDLEY, District Judge.

Appellees, holders of special assessment bonds issued by appellant as a municipal corporation, brought suit in equity, charging that the city had collected some $95,000, paid in advance upon deferred installments in the special assessment proceedings, had failed to call bonds for redemption out of the same and had illegally diverted and lost said moneys. Appellees prayed that they be awarded an accounting with respect to the collection and diversion of said funds and that they have money judgments pro rata, against the city for the amounts diverted. In an amendment appellees further charged that the city had wrongfully abated certain assessments and prayed that it be compelled to restore such wrongful abatements to the funds against which appellees' bonds were issued.

The special master found that the city had wrongfully diverted from the special assessment funds securing appellees' bonds, amounts paid in satisfaction of damages to land and for similar purposes, $25,973.68; that the city had lost from said funds, by embezzlement of employees, $36,558.84 and by bank failures, $22,596.30, and that the city had wrongfully paid a voucher of $146.56 from the funds protecting the bonds, a total, for which he recommended an accounting, of $85,275.38. He concluded that the diversion rendered the municipality liable to the bondholders. He further found that the action of the city in abating assessments in the amount of $771.75 was wrongful as against appellees and that the city was liable for interest on the diverted funds from the respective dates of the diversions.

The court entered a decree, confirming the master's findings and conclusions, and judgments in favor of the appellees against the city for pro rata sums representing the respective interests of the appellees, as bondholders, in the funds. Certain of the moneys had been recovered and the court decreed that the pro rata sums represent-ing appellees' respective interests as bondholders therein should be paid them by the city. Judgment was entered against the city for these amounts, with the provision that the payment of same, when made, should apply upon the original judgments. The decree further directed that the city restore the sum of $771.75 which had been lost to the trust estate by illegal abatements.

Appellant contends that it is not personally liable to any holder of special assessment bonds before the maturity thereof; that it is not liable for interest on diverted special assessment funds from the date of the diversion; that the payments made upon vouchers for land and similar purpose were not improper; that appellees cannot complain concerning them; that a city which abates or reduces assessments is under no obligation to pay the amount of such abatements into the special assessment fund.

The bonds of appellees were part of those issued by the city in pursuance of proceedings for the construction of a local improvement, Jacksonville Special Assessment No. 220 or South Side Sewer System. In compliance with the statute, the municipality proceeded to construct the improvement and assessed against the public and private property benefited the cost, aggregating $591,000. This action was confirmed by the county court, on February 1, 1930. The total assessment was divided into twenty installments. The first, $49,500, was due January 2, 1931, and the other nineteen, each for $28,500, were due serially on the second day of January of each year thereafter up to and including January 2, 1950, and bore interest at the rate of 6 per cent. per annum.

Vouchers were issued against the first installment and a portion of the second. The bonds were issued against all subsequent installments. A reserve for payment of possible interest deficiencies on bonds and vouchers, issued in anticipation of the collection of the assessments, in the sum of $40,135.23 was included in the assessment. The total bond issue was $309,000. Each bond provided that it was issued to anticipate the collection of a certain installment of the assessments for the improvement, bore interest at the rate of 6 per cent. per annum from March 1, 1930, and was payable solely out of the installments when collected. The various bonds matured serially at successive dates.

■ Under the Illinois Local Improvement Act, Smith-Hurd Rev.Stat.Ill. c. 24, §§ 777 to 799, no holder of vouchers or bonds has any claim or lien against the city, it being the evident purpose and intent of the Legislature to hold the city in no way originally responsible or liable for the bonds or interest. City of Chicago v. Brede, 218 Ill. 528, 75 N.E. 1044. Such bonds are not negotiable instruments and are subject to such defenses as arise out of the statutes. Northern Trust Co. v. Village of Wilmette et al., 220 Ill. 417, 77 N.E. 169, 5 Ann.Cas. 193; Moore v. City of Nampa, 276 U.S. 536, 48 S.Ct. 340, 72 L.Ed. 688. The moneys pledged to secure them, the creation of which comes about by the collection of the assessments, constitute a trust fund pledged to the payment of all bonds, and the city in collecting and disbursing the same is a trustee charged with all the duties of such a fiduciary. Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337. If a municipality makes a wrongful diversion or misappropriation of the trust funds, the beneficiaries, that is, bondholders, holding matured obligations, have the right to sue for their pro rata share thus diverted, Rothschild v. Village of Calumet Park, supra; the theory being that by the conversion, the city, not previously personally liable, under the statute, because of its wrongful act, becomes directly liable for the resulting loss to the bondholders. Rothschild v. Village of Calumet Park, supra; Lehmann v. Rothbarth, 111 Ill. 185; Bankers Life Co. v. Elmwood Park, 280 Ill.App. 524.

The obligations here sued upon had not matured. The dates upon which appellees would become entitled to receive money had not yet been reached. Consequently, a serious inquiry arises at the threshold as to the propriety of a judgment in favor of bondholders of unmatured bonds, where diversion of the trust funds has occurred.

Section 43 of the Local Improvement Act, Smith-Hurd Rev.Stat.Ill. c. 24, § 745 note, governing at the time these bonds were issued, was enacted in 1897. It provides for prepayment of assessments before their maturities and states that on or before January 10th of each year the treasurer of the municipality shall ascertain the amount of such prepaid assessments collected and applicable to the payment of bonds of each series unmatured and shall select by lot bonds to be paid therewith. This provision of the statute was enacted to afford property owners the right to anticipate assessments, to provide that bondholders who hold unmatured bonds shall have the right to a distribution of such accumulated prepaid assessments and to cause the city to pay same to such holders and discharge outstanding interest bearing obligations. Under this act, it was the city's duty to select certain unmatured bonds by lot and apply the prepaid assessments in the proper ratios thereon. This the city did not do. Appellees did not apply for mandamus, but in due course filed this suit.

■■ The particular section of the statute last cited was amended in 1927, but the amendatory act was declared unconstitutional in Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337, 340. The act was amended again in 1933 (Smith-Hurd Ill.Stats. c. 24, § 745), after the bonds in suit had been issued and had passed into the hands of the holders. The later act authorizes a municipality to prorate prepaid accumulated funds upon unmatured bonds. To apply the provisions of that statute to appellees would be to give it a retroactive effect, which we do not believe is proper. Thus, in Rothschild v. Village of Calumet Park, supra, the court said: "Statutes are, as a general rule, prospective, only, in their operation, and they will not be construed to have a retrospective operation unless the language used in the statute is so clear that it will admit of no other construction. White Sewing Machine Co. v. Harris, 252 Ill. 361, 96 N.E. 857, Ann.Cas.1912D, 536; Dunne v. County of Rock Island, 283 Ill. 628, 119 N.E. 591; O'Brien v. Chicago City Railway Co., 305 Ill. 244, 137 N.E. 214, 27 A.L.R. 479. The bonds in this case were issued in 1920 and 1921. They contained on the face of each bond the statement required by section 86 [Smith-Hurd Ill.Stats. c. 24, § 792], 'this bond and the interest thereon are payable solely out of' a specified installment of a designated assessment. This was a contract binding on both the village and the bondholder, and even if that which is now relied on by the plaintiff in error as an amendment of section 43 were a valid amendment, it contains no language requiring or justifying a construction that it was intended to apply to these previous valid contracts by authorizing the collections from installments out of which, alone, the defendant in error's bonds were payable, to be distributed among an indefinite number of bonds selected by

chance." See, also, People ex rel. v. Deutsche, etc., Gemeinde, 249 Ill. 132, 94 N.E. 162. To apply this act would be to compel appellees and other bondholders, irrespective of their desires, to accept payment and discharge of interest paying obligations, prior to their maturity. Inasmuch as the statute contains no language purporting to give it a retroactive effect, in view of the results that would follow, we hold that the rights of appellees on unmatured bonds are measured by the act of 1897, under and by virtue of which their statutory remedy is to compel a selection of bonds by lot and application of accumulated assessments thereon; that appellees are holders of unmatured obligations, whose right to recover upon their securities has not yet matured and whose only other remedy under the statute is to compel application upon bonds selected by lot. Conway v. Chicago, 237 Ill. 128, 86 N.E. 619. Inasmuch as no one can be assured that the bonds of appellees would have been selected in such a drawing, there is no basis for liability against the city in the form of a personal judgment.

■ We are not oblivious to the duties of trustees to preserve trust funds and to administer the same in accordance with equitable doctrine. Courts of equity are primarily responsible for the protection of rights arising under trusts and they will provide whatever remedy is necessary to protect cestui que trusts and the funds in which they are interested as beneficiary and to prevent loss or destruction thereof. They have power to compel the trustee to perform specific acts, to restore diverted trust funds and other wide jurisdiction over a trust, its property, and the trustee.

But such powers will not justify a personal judgment upon unmatured obligations. The bill prays an accounting and personal judgment, and the decree is in accordance with the same. The judgments were entered on the theory of money had and received for the use of beneficiaries; but under the language of their bonds, appellees are not yet entitled to receive the same. Their remedies must be such as the statute affords and such as grow out of jurisdiction in equity to protect and enforce trusts. These do not include personal judgments upon unmatured obligations. Consequently the decree must be reversed as to the judgments entered against the city.

■ However, that portion of the decree which directs a restoration of certain wrongful abated assessments in the sum of $771.75, is in accord with equity. An order, ordinance, or resolution vacating assessments against certain property assessed is not authorized. Washington v. DesPlaines, 344 Ill. 613, 176 N.E. 915. Under section 56 of the act (Smith-Hurd Ill.Stats. c. 24, § 758), after bonds have been issued, no judgment of assessment may be vacated or modified without the consent of the contractor and bondholders. Wilmette State Bank v. DesPlaines, 349 Ill. 106, 181 N. E. 696. A trustee has no power to make a gift of trust property, or to diminish the trust fund by voting a gratuity out of it. 65 C.J. 702. Courts of equity have jurisdiction generally, on application of beneficiaries of a trust fund, to charge trustees with losses occurring through their mismanagement and to compel restoration. Waterman v. Alden, 144 Ill. 90, 32 N.E. 972; Hilton's Adm'x, v. Potter-Matlock Trust Co., 230 Ky. 401, 19 S.W.(2d) 1088, 1090.

In view of our conclusions, it is unnecessary to observe further points urged by appellant. What may hereafter transpire is not now before us, and to express our opinion concerning the same would be mere obiter dictum. Accordingly the decree is reversed in so far as it includes judgments against the city of Jacksonville; as to that portion of the decree directing restoration of the abated assessments, it is affirmed.