SAWICKI *v.* CITY OF HARPER WOODS.

MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—REFUND OF EXCESS COLLECTIONS.
Refunds of collections in excess of requirements for special assessments for street improvement purposes *held*, permissible, where no provision of any outstanding evidence of indebtedness is shown to preclude the making of refunds (Harper Woods Charter, § 148).

CARR, C. J., and DETHMERS and KELLY, JJ., dissenting.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted October 4, 1962. (Docket No. 21, Calendar No. 49,633.) Decided December 4, 1962.

Bill by Edmund A. Sawicki and other property owners as a class suit against the City of Harper Woods, a municipal corporation, Herbert Tucker, city manager, and Donald Burney, city treasurer, for refund of sums paid on special assessment in ex-

REFERENCES FOR POINTS IN HEADNOTE
48 Am Jur, Special or Local Assessments § 261 *et seq.*

cess of cost of street improvement. Action dismissed on motion. Plaintiffs appeal. Reversed and remanded.

*L. Edwin Wenger* (*S. Gerald Gorcyca,* of counsel), for plaintiffs.

*Platt & Platt* (*Dickinson, Wright, McKean & Cudlip,* of counsel), for defendants.

Carr, C. J. (*dissenting*). During the year 1957, and thereafter, the city of Harper Woods engaged in a program of street improvement, establishing some 37 districts in connection therewith. Special assessments were levied in each district in accordance with charter provisions, and bonds were issued and sold to raise funds for the financing of the work. Plaintiffs in the instant case are residents and property owners in defendant city against whose property assessments were levied and collected. Apparently residents of some of the districts were not included as parties plaintiff, the right to proceed being based on the theory of a class suit.

It was the claim of the plaintiffs, as set forth in their pleading, that they were entitled to a refund of special assessments paid by them on the ground that the amount collected by the city gave them such right. Reliance was placed on section 148 of the city charter, which reads as follows:

"Sec. 148. The excess by which any special assessment proves larger than the actual cost of the improvement and expenses incident thereto, or the amount necessary to pay the principal and interest on bonds issued in anticipation of such assessment roll, may be placed in the general fund of the city if such excess is 5% or less of the assessment, but should the assessment prove larger than necessary

by more than 5% the entire excess shall be refunded on a pro rata basis to the owners of the property assessed as shown by the current assessment roll of the city (and to the city to the extent it has been assessed). Such refund shall be made by credit against future unpaid installments to the extent such installments then exist and the balance of such refund shall be in cash. No refunds may be made which contravene the provisions of any outstanding evidence of indebtedness secured in whole or in part by such special assessment."

Defendants filed answer to plaintiffs' bill of complaint incorporating therein a motion to dismiss, asserting, among other grounds thereof, that the action was prematurely brought because bonds issued were still outstanding and all assessments had not been collected in the various districts involved. Defendants relied in their presentation of the motion in trial court on the concluding sentence of section 148 of the charter, above quoted, urging that the moneys that had been collected constituted a trust fund for the benefit of holders of the obligations issued and outstanding, and that under the proper interpretation of the section of the charter in issue parties paying special assessments on their property had no legal right to seek a refund on the theory of an excess in the amount collected as long as the indebtedness evidenced by the bonds remained unpaid. The trial judge agreed with defendant city's contention and, without discussing other matters raised by the motion to dismiss, determined that the suit was prematurely instituted. An order was accordingly entered dismissing the bill of complaint, and plaintiffs have appealed. It is their claim that an excess existed in the funds collected under the special assessments made in such an amount as to entitle them presently to a refund. Defendants assert that the trial judge was correct in his ruling and insist that

plaintiffs may seek the refund if they shall be entitled thereto when the outstanding bonds are fully paid.

The purpose of the bond issue was, of course, to raise money to carry the various projects through to completion, and it is not questioned in the case that the funds so received by defendant city have been used for that purpose. Section 153 of the municipal charter, which counsel for defendants claim is in accord with the general rule relating to the character of special assessments levied for public improvements in connection with which bonds have been issued, reads as follows:

"Sec. 153.  Except as otherwise provided in this charter, moneys raised by special assessment for any public improvement shall be credited to a special account and shall be used to pay for the costs of the improvement for which the assessment was levied and expenses incidental thereto and/or to repay any money borrowed therefor."

The matter of refunding moneys paid under special assessments for public improvements is discussed in 14 McQuillin's Municipal Corporations (3d ed), § 38.336, where it is indicated that action taken pursuant to statute is governed by the provisions thereof. By analogy the provisions of the municipal charter of the defendant must be regarded as determining the rights of plaintiffs, and obviously their suit is based on that theory. The following language in the section of the text cited is significant as indicating the nature of the fund collected from special assessments, and the primary right of bondholders entitled to the protection of the fund:

"Landowners paying special assessments to a fund to pay bonds issued to cover the actual cost and expenses of the improvement in excess of the sum re-

quired, due to miscalculation or mistake, are, in equity, justly entitled to have such excess refunded to them, each landowner to receive the excess paid by him, that is, the excess should be prorated among the property owners, as it may appear that each has paid. Such money, when collected from the several property owners becomes a trust fund, to be used only for the purpose specified, and when the bonds and interest and other legal expenses chargeable against such fund have been satisfied, the balance belongs to the landowners."

The rights of bondholders in the fund created by the payment of special assessments in cases of the nature under consideration here, and the extent of the protection afforded the holders of such obligations, was well expressed by the supreme court of Indiana in *Loesnitz* v. *Seelinger, Treasurer,* 127 Ind 422, 430, 431 (25 NE 1037), in the following statement:

"The contractor and the cost of the improvement are paid by the board of commissioners out of a fund raised from the sale of the bonds, and the assessments are collected to pay the purchasers of the bonds. Certainly it will not be contended that the purchasers of the bonds issued by the board are to be held responsible for the proper application of funds to the purpose for which they are raised. Such a construction of the statute would wholly defeat the object of the law, for if the purchaser of such bonds was compelled to take the hazard of losing his money in the event the funds were wasted or misapplied, he would not purchase. For these reasons, among many others that could be given, we think that mere error in the board in the matter of letting the contract, in the matter of making the estimates, or even in recklessness, or wanton or inexcusable negligence in the use of the funds, when raised by the sale of the bonds, can not affect the validity of the assessments."

In recognition of the general principle involved it was held in *State, ex rel. Donsante,* v.. *Pethtel,* 158 Ohio St 35 (106 NE2d 626, 28 ALR2d 1419), that a municipal corporation was without authority to compromise, abate, or cancel special assessments levied for a public improvement, bonds having been issued, and outstanding, in anticipation of the collection of such assessments. Of like import is the decision in *City of Longview* v. *Longview Company,* 21 Wash 2d 248 (150 P2d 395), which involved the question as to the right of a municipality to make refunds to assessment payers out of the funds of the improvement district before all outstanding bonds issued in connection with the improvement had been retired. It was held that the city stood in the position of a trustee for the benefit of bondholders, that it was liable for its improper action as such, and that those assessment payers receiving refunds were liable therefor. In accord with the above decisions, and with the general rule that special assessments the proceeds of which are to be used for the payment of bonds constitute a trust fund for such purpose, are *Rothschild* v. *Village of Calumet Park,* 350 Ill 330 (183 NE 337); and *City of Jacksonville* v. *Bankers Life Co.* (CCA 7), 90 F2d 141.

In the case at bar the purchasers of the bonds issued had the right to rely on the charter provisions in accordance with which the municipal action was taken. The special assessments collected from plaintiffs and others under such provisions, and in accordance with the general rule pertaining thereto, constituted a trust fund, which fund was designed to furnish security for the payment of the obligations. The granting of refunds prior to the retirement of the bonds would result in the impairment of the security for the payment of outstanding obligations and interest thereon. The closing sentence of sec-

tion 148 of the municipal charter must be construed as limiting the application of preceding provisions and as an express recognition of the nature of the fund collected from the assessments and the rights of the bondholders therein.

It appears from the pleadings in the case that the city added to the total cost of construction contracts 10% thereof, in making up the amount to be collected by assessments, to cover the administrative and engineering expenses incurred and to be incurred by the city. Plaintiffs insist that such inclusion was improper and that the assessments were accordingly excessive. On behalf of the city it is claimed that the added amount was necessary to cover the contingent expenses referred to and that without such inclusion the municipality would as a practical result be bearing a portion of the cost of the district improvements that the taxpayers generally of the city should not be required to assume. We think this question should be held in abeyance pending a final determination of the rights of the parties after the bonds have been retired. The court should not be required to conduct 2 trials in order to decide the matters at issue.

The trial judge correctly held that plaintiffs' suit was prematurely brought. The order from which the appeal has been taken should be affirmed. In view of the nature of the case no costs are allowed.

DETHMERS and KELLY, JJ., concurred with CARR, C. J.

SOURIS, J. I cannot agree that defendants were entitled to dismissal of this bill of complaint on the ground relied upon by the chancellor and affirmed in the Chief Justice's opinion. The key sentence of section 148 of the defendant city's charter provides that: "No refunds may be made *which con-*

*travene the provisions of any outstanding evidence of indebtedness* secured in whole or in part by such special assessment." (Emphasis added.) No reference is made in the Chief Justice's opinion to any provision of the outstanding bonds involved in this controversy which would preclude the refunds expressly authorized by the preceding provisions of section 148. This Court is in no position, nor was the chancellor, to make such determination for the reason that, inexplicably, the record discloses none of the provisions of the bonds involved.

As I read Chief Justice Carr's opinion, he construes the quoted charter provision to mean that no refunds may be made so long as there are any outstanding bonds secured in whole or in part by such special assessment, thereby obviating necessity for reference to the provisions of the bonds. As I read the charter, it means that no such refunds may be made in the event there are provisions in the bonds which would be contravened by such refunds. In other words, the charter specifically acknowledges the right of bondholders to require retention by the city of all special assessments collected until the bonds are paid, but this requirement must be specified by affirmative provision in the bonds. Failure of the draftsmen of the bonds to so provide cannot deprive plaintiffs of their right to refunds expressly granted by the charter.

I would reverse and remand for further proceedings, with costs to appellants.

BLACK, KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., concurred with SOURIS, J.