HERBERT LESSER *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF MUNDELEIN, Defendant-Appellant.

Second District    Nos. 79-850, 80-15 cons.

Opinion filed on rehearing June 16, 1981.

Charles F. Marino, of Chicago, for appellant.

Herbert Lesser, of Chicago, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal grows out of a suit for an accounting whereby the plaintiffs seek to fix the liability of the Village of Mundelein (hereinafter the Village) on certain special assessment bonds issued by the Village from 1925 through 1928. Lesser purchased his bonds during 1964 through 1967; Sutton acquired hers by inheritance in 1959. This is the second appeal in this case, see *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, *reversed and remanded on appeal.*

Some 131 of the bonds held by Lesser were declared by the circuit court of Lake County to be unenforceable by reason of having been stamped "Final Payment" at a date more than 10 years prior to the suit. There remained 26 bonds of Lesser's and eight bonds of Sutton's, which are the basis of the judgment granted by the trial court in this case. While contesting the amount allowed on the 26 bonds of Lesser and the eight bonds of Sutton which were considered by the trial court, Lesser also raises, by cross-appeal, the contention that the 131 bonds declared by the trial court to be invalid were not legally repudiated and are still valid and collectible.

The trial court, after a trial on the merits which consisted mainly of testimony and cross-examination of the plaintiffs' and defendant's accountants, awarded Lesser $12,874.48 and Sutton $2,231.33. These sums represent what the court found to be the plaintiffs' pro rata share of the sums collected by the Village on the assessments underlying the bonds and which had not been paid to the bondholders. The court also awarded Lesser $750 in attorney fees and $6,000 for accountant fees. In addition, although not asked for in the complaint, the trial court found that the Village owed $37,000 plus a supplemental sum of $10,564 as trustee in connection with public benefits assessed against the Village in special assessment Warrant No. 7, which the Village had never paid into the trust account.

The Village appeals the order of the trial court awarding Lesser $12,874.48 and Sutton $2,231.33 and the award of attorney and accountant fees as well as that part of the order concerning public benefits. The Village contends that Lesser is only entitled to $146 and Sutton nothing. Plaintiffs cross-appealed, contending they are entitled to some $39,000 (including interest) and that the allowance for attorney and accountant fees is substantially inadequate. Lesser also appeals the trial court's ruling eliminating the 131 bonds from the suit.

■■ We consider first the plaintiffs' motion taken with the case to strike certain tables, computations and worksheets purporting to show errors in

the plaintiffs' exhibits or supposedly showing compilations or summaries of amounts due to the plaintiffs. The plaintiffs' motion is based on the contention that none of the schedules, compilations, summaries or worksheets in question were ever submitted to the trial court during the trial of the case, therefore they constitute an attempt to introduce new evidence before this court.

The defendant denies that these schedules, compilations or worksheets are new evidence, contending that the same were submitted in oral argument before the trial court on post-trial motions prior to the judgment order being entered and that the amounts shown on these materials are all taken from exhibits in evidence and therefore are not new evidence. It appears from the nature of these materials that they are compilations of material introduced in one form or another as exhibits during trial and while new in the form presented, are not actually new materials, that is, new evidence introduced on appeal. The same information is contained in exhibits previously offered into evidence. This material is helpful to the court in this case, and we do not consider it to be new evidence which we cannot consider. The motion to strike this material is denied.

The Village's contention that the trial court erred in the award to Lesser proceeds from the differences in accounting theory between Fredericks, the plaintiffs' accountant, and Lyons, the Village's accountant. To understand the controversy over accounting concepts it must be realized that the plaintiffs' calculations as to the balances due them on the bonds they hold are based on the *percentage* of collections to total outstanding bond liabilities. Thus, not only the amount collected but the amount of total liability against which these collections must be applied are critical factors in determining the amounts that the plaintiffs can recover. There are several factors affecting the total outstanding bond liability against which collections should be applied to calculate the percentage of recovery due the plaintiffs: (1) "applications", that is, bonds used to pay assessments and being regarded as having been "applied" to the assessment; (2) certain bonds which were cancelled without payment after July 1957, following a final pro rata distribution; (3) interest deficiencies; (4) apportionment of surpluses between installments; and (5) alleged errors increasing the apparent collections due to a correction for missing records, referred to in the briefs as "plugged in" figures.

The question of applications is complicated by a change in the law in 1939, following the issuance of the bonds in question. At the time the bonds were issued the statute provided that a bond applied on an assessment was subject to cancellation, thus eliminating the balance remaining, if any, after paying the installment. This provision, however, was not always followed in practice and it appears that it was the custom of the

Village to merely reduce the face amount of the bond by the amount of the assessment and return the bond to the bondholder.[1] In this treatment of such "applications" the plaintiffs' accountant regarded such bonds as having been cancelled and reduced the outstanding bond liability accordingly, thus increasing the percentage of collections by reducing the amount against which the collections should be applied in calculating the plaintiffs' recovery.

Certain bonds were cancelled by the Village following a final pro ration and distribution in July of 1957, and no further payment was made on these bonds. Fredericks treated these cancellations as reducing the amount of outstanding bond liability, thus again increasing the percentage of collections on the bonds remaining. ·

Interest collections were another source of dispute. In Fredericks' calculations, interest deficiencies were not made up out of principal where there was a deficiency in an interest installment. Lyons, the Village's accountant, contended that where there was a deficiency in an interest installment it should be made up out of principal collections, since payments of interest come first, thus reducing the amount allocated to principal collections. It was also alleged by the Village that in Fredericks' calculations surpluses in collections in certain installments were improperly allocated to other installments which were deficient, thus increasing the collections in such installments. Since each installment is regarded as a separate entity, this affected the net result to the plaintiffs.

In making his initial calculations, Fredericks discovered a "gap" or hiatus in the Village assessment roles between 1931 and November 1934. This he made up for by taking principal collections shown on the Village audit reports from 1929 to 1958, subtracting therefrom the collections taken from special assessment rolls and the Village records after November 1, 1934, and then dividing the differences equally between the years in which the hiatus occurred. The Village contends these figures could have been calculated more accurately by using only the audit reports for 1931 to 1934, and it would be indicated thereby that collections were considerably less than by the "plug-in" method used by Fredericks.

It will be observed that the areas of conflict delineated above proceed from opposing accounting concepts. The issues are technical, requiring special expertise, and the testimony was voluminous—nearly 700 pages—and highly contradictory. The trial court did not clearly rule on all the matters in controversy, nor does its final judgment order indicate the basis for the judgment as to the amounts awarded.

Three issues presented on this appeal are:

---

[1] In 1939, the statute was amended to allow this practice. (Ill. Ann. Stat., ch. 24, par. 9—2—132, Historical Notes, at 101 (Smith-Hurd 1962).)

(1) Whether the trial court awarded the plaintiffs amounts in excess of their pro rata share of the amounts collected by the Village on the bonds in question;

(2) Whether the award of attorney fees of $750 and accountant fees of $6,000 was proper, and

(3) Whether the court acted properly in ordering the Village to pay into the special assessment fund the unpaid balance of certain public benefits.

As to the first issue, the court's award is apparently based on the plaintiff Lesser's claim of $9,597.75 for unpaid bonds and $4,273.80 on a voucher, making a total of $13,871.55,[2] and on Sutton's claim of $2,231.33 for unpaid bonds. Lesser's claim for over $22,000 in "penalty interest" (interest on money rightfully received but wrongfully withheld—Ill. Rev. Stat. 1979, ch. 74, par. 2) was ignored by the court. Thus it appears that the trial court, after disregarding the claim for penalty interest and deducting the unexplained amount of $1,000 from Lesser's claim, based the judgment on the pro rata calculations submitted by Fredericks, Lesser's accountant. It would seem a necessary conclusion that the trial court thereby accepted the accounting theories of the plaintiffs' accountant. As we have indicated, no findings were made by the trial court as to the basis for the amounts awarded. We do not find the award to be against the manifest weight of the evidence as to the bonds and voucher considered by the court on the basis of the records adduced at trial. However, the plaintiffs based a part of their claim on the theory that applications and cancellations served to reduce the outstanding bond liability, thus increased the percentage of collections to bond liabilities. The trial court apparently agreed with this theory, since in the course of the colloquy with plaintiffs' counsel it stated that it considered the bond liability to have been reduced by the amount of the applications. The same principle would apply to cancellations, following a final pro ration and pay out—that is, the outstanding bonds would be reduced by such cancellations, thus increasing the percentage of collections for the remaining bondholders.

■■ While the trial court did not indicate the basis for its award of $12,874.48 to Lesser and $2,231.33 to Sutton on the bonds considered, this was the amount claimed by the plaintiffs, less $1,000 which was deducted from the claim by the trial court without explanation. To the extent, however, that this award was increased by considering bond cancellations and applications as cash collections, the result would be in conflict with

---

[2] There is an unresolved discrepancy of $2.93 between this figure and the amount actually allowed by the court (less $1,000) due to a difference in calculating interest.

the case of *Diver v. Village of Glencoe* (1978), 63 Ill. App. 3d 1052. We are inclined to follow the *Diver* opinion and not to treat bond applications and cancellations as cash collections. To the extent this was done, we think the award was in error. Since no basis for the amount awarded was set forth in the trial court's judgment order, we cannot ascertain to what extent, if at all, this was a factor. As to other accounting practices followed by the plaintiffs' accountant for the allocation of interest and surpluses we agree with his treatment since, according to his uncontradicted testimony, he followed the accounting practices of the Village itself over a period of years. Likewise, we accept the plaintiffs' theory of corrections for missing figures which the plaintiffs' accountant used to plug the gap in the record of several years, between 1931 and 1934.

■■ As to that part of the trial court's judgment finding the Village delinquent in paying its assessment for public benefits, we see no error. The Village objects to this part of the judgment on the ground that the plaintiffs did not raise this issue in their complaint, but as the trial court remarked, this is an action for an accounting, and under the court's equitable powers in a case for an accounting there was ample ground for a finding of accountability of the Village in connection with its assessment for public benefit. It was certainly not required of the trial judge in making findings and judgment for an accounting to ignore the sizable dereliction of the Village for its public benefit liability amounting to $37,400 and a subsequent assessment of $10,564. The amount of the judgment was established by the evidence presented and we see no error in that aspect of the judgment.

■■ However, we disagree with the trial court's allowance of attorney fees and accountant fees to the plaintiff. The plaintiffs' theory is that the Village is accountable as a trustee, and this is correct, but the Village is only accountable to the extent of the proven collections of the installments under which the plaintiffs' bonds fall. The Village is a statutory trustee, that is, the funds it collects are designated for an express purpose and are not to be commingled with other corporate funds; thus, they are regarded as trust funds for the benefit of the bondholders. (See *Rothschild v. Village of Calumet Park* (1932), 350 Ill. 330.) However, the trust obligation is not to the extent of the face amount of the bonds, but only to the extent of the particular installment relating to those bonds, and to the extent those amounts are collected by the Village, the bondholder is entitled to the pro rata percentage of the amount collected by the Village. See *Diver v. Village of Glencoe* (1978), 63 Ill. App. 3d 1052.

Thus, the nature of the obligation is that of a corporate trustee, not a personal relationship of trust and confidence, and the Village in disbursing these funds has obligations not only to the bondholders but to the

general taxpayers whose special assessment payments constitute the trust fund. Considering that the bonds in question were issued some 40 years before the suit was filed and almost 50 years before the Lesser's accountant began his investigation on an installment basis, it is not surprising that there was some difficulty in tracing and ascertaining the collections and apportionments thereof of principal and interest, applications and cancellations, and arriving at a clear accounting picture. After almost 700 pages of testimony great differences still existed not only between the parties to the controversy but between the two expert accountants as to the proper method of calculating collections and disbursements of the bond funds. Lesser's bonds were purchased from a bank in 1964. Mrs. Sutton's bonds were inherited in 1959. In the ascertainment of the amounts due for principal and interest on some 34 bonds after various transactions affecting them occurred over a period of 40 years, it is to be expected that a certain amount of accounting time would be required by plaintiffs' accountant, especially since plaintiffs were aware that the claim was in dispute in several particulars. The development of the claim under these circumstances would reasonably be expected to require some time and effort, and it seems reasonable to charge this time to the plaintiffs. Plaintiffs contend that the Village was at fault in not keeping its records on an installment basis, rather than a warrant basis, before 1934. However, the installment method was not required by law originally, and Lesser was aware, or should have been aware, at the time he purchased the bonds that the records had been kept on a warrant basis. Indeed, Lesser apparently proceeded initially on a warrant basis himself in developing the claim and on the advice of Fredericks and the order of the trial court, the claim was then reconstituted on an installment basis, since it was not practicable to trace the amounts owing otherwise. The plaintiffs claim that the time required for the development of the figures for one installment as done by Fredericks (the remaining installments having been developed by the Village) should be charged to the Village because the Village should have kept its records on an installment basis to begin with. It is not claimed that the Village did not have records but rather that the various bond transactions were difficult to follow on a warrant basis because it was necessary to resort to several records to do so. The Village apparently began developing its records on the installment basis in 1934, and we see no reason to charge the plaintiffs' accountant's fees to the Village because it originally chose an awkward method of keeping these records which required extra accounting time for plaintiffs' accountant to unravel. We therefore reverse the trial court's award of $6,000 for accountant's fees.

■■ We likewise see no reason to charge the Village with Lesser's attorney

fees. We do not think the circumstances of this case justify an award of either accountant fees or attorney fees merely because it is a suit for an accounting. Over a long period of years the courts of Illinois have declined to award experts and attorney fees against the unsuccessful litigant. In *Constant v. Matteson* (1859), 22 Ill. 546, 560, the court said: "While the court of equity has a discretion in awarding costs in chancery causes, it must confine that descretion to the fees allowed by the statute."

This principle was reiterated in *Hutchinson v. Hutchinson* (1894), 152 Ill. 347, 355, where it was said:

> "The general rule that prevails in this State is, that solicitors' fees and experts' fees can not be taxed as costs against unsuccessful litigants in chancery suits, and that the discretion of the chancery courts in awarding costs in such cases is confined to statutory allowances."

In *Ritter v. Ritter* (1943), 381 Ill. 549, 553, the court commented:

> "A court of chancery may be vested with a power to exercise a discretion in awarding costs but the power to act must come from a statute and the discretion must be confined to that which is authorized by legislative enactment."

This principle is reaffirmed in the more recent case of *Waller v. Board of Education* (1975), 28 Ill. App. 3d 328, 331, citing *Ritter* and commenting: "The legislature has in the past *specifically* provided for attorneys' fees where it wished to, and the courts have refused to interpret imprecise language as permitting attorneys' fees." Lesser conceded that he had no claim for the time spent on his own bonds, since he was acting *pro se* as to them, but he claims he was entitled to fees for time spent on Mrs. Sutton's bonds. The court awarded $750 for work done on behalf of Mrs. Sutton. Following the precedents referred to above, we see no basis for even this modest allowance. The $750 awarded for attorney fees is therefore reversed.

We consider now the remaining issues in the plaintiffs' cross-appeal. In Lesser's cross-appeal he contended he was entitled to a greater sum than was awarded on the bonds considered by the court, however, other than the arbitrary reduction previously alluded to of $1,000, the court's judgment order awarding $12,874.48 to Lesser and $2,231.33 to Sutton seems to have been in accord with the plaintiffs' claims, which were $13,874.48 and $2,231.33, respectively. In the cross-appeal, however, the plaintiffs claim they are entitled to an award of $39,768.10, over $23,000 of which sum apparently represents interest for money due the plaintiffs and wrongfully withheld, referred to in the plaintiffs' brief as "penalty interest." This claim is based on section 2 of the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 2), which provides:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

■■ While the plaintiffs cite the above wording of the Interest Act as the legal basis of their claim for interest, they at the same time claim exemption from operation of the Limitations Act on the basis that this is an action for an accounting, not susceptible to the Limitations Act. If that be true, however, a court of equity may disregard interest in a particular case where the circumstances do not merit it. The court did so in this case, and we are not inclined to disagree. We acknowledge the import of the decisions cited by the plaintiffs, such as *Rothschild v. Village of Calumet Park* (1932), 350 Ill. 330, and *Conway v. City of Chicago* (1908), 237 Ill. 128, on the question of interest due assessment bondholders. However, the particular circumstances of this case are not parallel to those cited, and the same result would not be mandated here. The bonds in question were issued over 50 years ago and have long since passed out of the hands of the original owners. While there are a couple of irregularities in the Village's handling of special assessment funds noted in the trial court's judgment order, these were requited by the Village and did not affect Lesser's claim. We do not think the circumstances here merit a huge award of statutory interest far exceeding the amounts found due for principal and interest on the bonds themselves. In our opinion, the case is readily distinguishable from those cited where interest for wrongful withholding has been awarded on the basis of diversions and irregularities, and we agree with the trial court's disregard of that part of the claim.

■■ The plaintiff, Lesser, contends as a point in his cross-appeal that the trial court erred in dismissing from this suit 131 bonds acquired and held by him in 1964. At the time he acquired these bonds they were stamped "Final Payment." While some mention was made by the trial court as to the Statute of Limitations in discussing these bonds with counsel, that statute does not appear to have been the basis for the trial court's ruling excluding these bonds. Rather, the basis of the trial court's ruling seems to have been that "Said stamp was affixed prior to the bonds being purchased by the plaintiff Lesser and he is therefor charged with knowledge of the claimed payment and endorsement of the bonds." Lesser contends the notation "Final Payment" on the bonds does not

amount to notice of repudiation of the trust. At the time of the last payment and the bonds being stamped "Final Payment" a letter was sent to the bondholders (but possibly not to all of them) informing them that the tax liens on the security involved had been foreclosed and no further collections were anticipated. Lesser says that these circumstances do not amount to a repudiation of the trust, and we agree that these words and the circumstances thereof may not have been sufficient to repudiate the trust. However, we think the stamp "Final Payment" together with the letter and the fact that the last payment had been made in 1958, some six years before Lesser purchased these bonds, were sufficient to charge the plaintiff with the knowledge that he was buying a stale and dubious claim that might not be enforceable. The stamp "Final Payment" was placed on the bonds some 10 years before the filing of the initial complaint in 1969. We agree with the decision of the trial court excluding these bonds.

The judgment of the circuit court of Lake County is affirmed as to that part of the judgment against the Village on its public interest obligation. As to the amount owed to the plaintiffs on the bonds considered in this case, the question arises as to what extent, if any, bond cancellations or bond applications may have been treated as cash collections. To the extent this may have been done, we believe, following *Diver*, that it was improper, and the case is therefore remanded to the trial court with directions to ascertain whether, in fact, collections were expanded by treating such cancellations and applications as cash collected and, if so, to reduce the collections accordingly in calculating the amounts due the plaintiffs on a pro rata basis.

The amount of the judgment was obviously based on the plaintiffs' claim established by the accountant, Fredericks. This was the amount allowed with, however, an arbitrary deduction of $1,000. No finding appears in the judgment order explaining this deduction. The trial court should indicate a rational basis for deducting the $1,000, or if there was no reason for it, the $1,000 should be restored to be consistent with the basis on which the judgment was apparently awarded. On remand, this part of the judgment order should be clarified or corrected as needed.

The trial court's decision allowing accountant's fees and attorney fees is reversed for the reasons indicated above.

Affirmed in part; reversed in part and remanded.

SEIDENFELD, P. J., and NASH, J., concur.